E. Robert Gould, Respondent, *v.* Simplified Tax Records, Inc., Appellant.

First Department, April 21, 1960.

*Henry W. Steingarten* of counsel (*Stevens H. Weiss* and *Robert J. Wolpert* with him on the brief; *Steingarten, Wedeen & Weiss,* attorneys), for appellant.

*Robert Konove* of counsel (*Gottlieb, Konove & Zeck,* attorneys), for respondent.

Breitel, J. Defendant appeals from a judgment in favor of plaintiff in the amount of $4,727.72 rendered in the Supreme Court after a trial without a jury.

Defendant publishes and sells to businessmen a simplified bookkeeping system tied in with a tax service. The systems, consisting of stationery supplies and the service, are sold through distributors, who purchase from defendant exclusive franchises to sell them in defined territories.

Plaintiff, a former distributor, authorized defendant to sell his franchise for his account. In this action he sought to recover 87½% of the sales price. Defendant contended that plaintiff was to receive only 10% of the sales price and that it was to retain the balance.

The trial court found that the testimony of neither party was entirely true. It concluded that defendant was to pay a 12½% commission to its employee who procured the sale and was also to retain a substantial additional amount equal to the other legitimate expenses it incurred on the sale. The balance of the

sales price, under the trial court's finding, was to be paid to plaintiff. Since the evidence supports neither the agreement alleged and attempted to be proved by plaintiff nor the agreement which the trial court concluded had been made, the judgment should be reversed and the complaint dismissed.

The background facts are not in dispute.

The franchise agreement under which plaintiff became one of defendant's exclusive distributors was made in August, 1957. Pursuant to the agreement, as informally modified, plaintiff paid defendant the sum of $10,500. In return, plaintiff received, without additional charge, 125 systems, a large quantity of promotional material to be used by him in selling the systems, and training at defendant's school and in the field. The franchise agreement was to extend for successive two-year periods, provided plaintiff met a specified sales quota. The franchise might not be assigned or sold by plaintiff without defendant's consent.

In the late Fall of 1958, plaintiff, giving ill health as his reason, sought to terminate the relationship. Plaintiff testified that he was told at the time, and later, that if defendant sold the franchise it would charge a 12½% commission. He admitted that he was urged to sell the franchise himself. Defendant's officers testified that plaintiff was told repeatedly that if defendant sold the franchise plaintiff would receive only 10% of the sales price pursuant to defendant's standard policy.

Plaintiff's efforts to sell the franchise himself failed. Several months later, defendant, with plaintiff's consent, sold the franchise for $15,500.

Plaintiff admitted at the trial that he knew that, if defendant sold the franchise, it would be required to pay a 12½% commission to the " franchise salesman " who negotiated the deal. Plaintiff also admitted that he was aware that defendant would also be subjected to considerable additional expenses in locating and qualifying his successor, although he seems to have denied knowing that defendant would have to pay a commission for the resale of a franchise. These expenses included such items as advertising in newspapers for potential distributors, providing the new distributor with systems, promotional material, and training similar to that which plaintiff had received when he became a distributor. The expenses, excluding the $1,500 commission paid to the salesman who procured the sale, were purportedly in excess of $7,500.

Hence, the evidence amply supported the trial court's finding that the agreement which plaintiff pleaded and attempted to prove had not been made. Since it was plaintiff who wanted to

terminate the contractual relationship, there was hardly any likelihood that defendant would enter into an agreement under which it would necessarily sustain a substantial loss. The defendant's bargaining position was too strong.

None of the evidence, however, establishes the agreement which the trial court concluded had been made. True, the parties could have agreed that defendant would receive only the expenses it incurred in arranging the sale. The difficulty is that absolutely no proof was submitted by either party that such an agreement was made.

The issue is more fundamental than a discrepancy between the agreement alleged in the complaint and the agreement which the trial court concluded from the proof had been made. A variance between the pleading and the proof, and even a failure of proof as to the agreement alleged in the complaint, might have been cured by an amendment of the pleading or directing a new trial on proper terms. (Civ. Prac. Act, § 434; Rules Civ. Prac., rule 166; 6 Carmody-Wait, New York Practice, pp. 721–737.)

Unlike the usual case involving a variance, the problem here is not that the evidence introduced by plaintiff was not fully in accord with his allegations. On the contrary, his testimony conformed to his pleading. The trouble was that his proof was not believable, and so the finder of the facts properly concluded. Hence, instead of a variance, there was a more basic discrepancy: the proof, consistent with the allegations, not only fails to support the court's decision, but is inconsistent with it.

Plaintiff testified as to one agreement. Defendant's officers testified as to a different agreement. There was no proof of any other or third agreement, such as the one found by the trial court. The three versions had a common subject matter, but were otherwise with respect to the issues in dispute as disparate as one could conceive. The justice administered in the courts is not so rough as permitted the court to develop its own version, necessarily either as a matter of speculation or of external imposition on the parties, in order to achieve what it deemed to be a fair result (*Schroeder* v. *Fredericks*, 25 Misc. 740; 89 C. J. S., Trial, §§ 574, 632; 53 Am. Jur., Trial, § 1144; see *Wright* v. *Delafield*, 25 N. Y. 266, especially 270).

To be sure, the court is not always limited to a choice between the opposing contentions of the parties. For example, where all the pertinent evidence bearing on the meaning of a written contract has been adduced, a court may adopt a construction of the contract different from that urged by either party (*Rentways, Inc.* v. *O'Neill Milk & Cream Co.*, 308 N. Y. 342,

349.). In such a case, however, the written agreement and the other proof constitute the necessary evidentiary foundation for the court's determination.

It has been suggested that since the cause of action alleged in the complaint was for money had and received, rather than for breach of contract, the trial court had greater leeway in disposing of the controversy. In view of the admitted existence of an enforcible agreement, only the terms of which were in dispute, the court could not dispose of the controversy on the basis of an inconsistent agreement implied in fact (*Miller* v. *Schloss*, 218 N. Y. 400, 406–408; *Abinet* v. *Mediavilla*, 5 A D 2d 679). Nor was there present the tortious or unjust retention of a benefit as sometimes gives rise to a contract implied in law (*Miller* v. *Schloss, supra*; *Nacional Financiera, S. A.* v. *Banco de Ponce*, 120 N. Y. S. 2d 373, 413–417 [SAYPOL, J.], affd. 283 App. Div. 939, motion for leave to appeal denied 284 App. Div. 844, motion for leave to appeal denied 308 N. Y. 1049; Restatement, Restitution, §§ 1, 3). Thus, regardless of the form of the action, the rights of the parties depended upon the agreement they made.

Since the judgment should be reversed for the reasons discussed, there is no occasion to consider the proof that plaintiff released his claim or that defendant in fact did have a standard policy under which its distributors received 10% of the price. Nor need it be decided whether the variance between the allegations of the complaint and the agreement found by the trial court to have been made also requires that the judgment be reversed.

Accordingly, the judgment in favor of plaintiff should be reversed, on the law and the facts, and the complaint dismissed, with costs to defendant-appellant.

BOTEIN, P. J., M. M. FRANK, STEVENS and BERGAN, JJ., concur.

Judgment unanimously reversed, on the law and on the facts, and the complaint dismissed, with costs to defendant-appellant. Settle order.