Mario Pittoni, J.
This is an action against Security Discount Associates, Inc. (hereinafter called Security) on an alleged third-party beneficiary contract, and for a direction against Continental Casualty Co. (hereinafter called Continental) that it pay the amount of any judgment against Security out of moneys deposited by Security with Continental. The action *930 against Rowan Realty Corp. was severed, and the action against the County of Nassau was discontinued.
The evidence on trial established the following facts.
On or about March, 1956 Rowan Realty Corp. filed with the Nassau County Planning Commission a map concerning a plot located in Nassau County known as Lido Beach Estates. The commission approved the map and a bond was posted with Nassau County for performance of certain work, in accordance with the map, such as drainage, paving, sidewalks, etc. Rowan Realty Corp. was principal in the bond and Continental was surety. The condition was that the principal, Rowan, perform the improvements required by law and by the commission. While the work was uncompleted, Rowan submitted and the commission approved an amended map covering a lesser area. Both the principal and the surety on the bond consented that the change in the principal’s obligations should in no way release the bond. The physical work is completed; however, a new map and street dedication is required before the county will release the bond.
Security, and four individuals who are not defendants herein, in order to induce Continental to become surety on the bond, became indemnitors, and deposited four savings bankbooks with Continental as collateral security. Thereafter, on November 18, 1958, there was a transaction between Security and Continental whereby the latter surrendered two of the bankbooks held as collateral and took $21,200 in cash as a substitute. Evidence shows that at this time drainage and street work was still to be done; that one Ambrosio was to do the drainage work; and that it was not yet decided who would do the street paving. Security requested that the money collateral be used to pay for the work as it progressed. Continental had no objection so long as the moneys were used to perform the principal’s obligation. A letter by Security authorized Continental to make certain payments to Ambrosio. Continental thereafter made certain payments out of this fund, at the request of Security, to Ambrosio and to several others who performed some of the work required of the principal.
On December 15, 1958, the plaintiff, Mineóla Paving Co., contracted with Rowan Realty Corp. to do the street paving work. Though the complaint alleges that this contract was entered into by the plaintiff in reliance on the November 18,1958 transaction between Security and Continental and the understanding that the funds were to be used for the street paving work, there is no evidence to establish such reliance. The plaintiff did the work contracted for and it was accepted by the *931 county. On August 8, 1959 Continental prepared a check payable to the plaintiff for $8,131.20, at the request of Security, and forwarded it to Security. The latter wrote “Payment Approved ” on the back, but never delivered it to the plaintiff. Security returned the check to Continental with a letter requesting cancellation and a credit to Security’s collateral deposit, on the ground that there was no obligation owed by Security to the plaintiff. Continental tore the signatures off the check.
On the above facts the decision must be for the defendants.
First, by its terms, the bond is a performance bond, and is inconsistent with an intention that persons other than the obligee (Nassau County) should have the right to sue upon it. (Fosmire v. National Sur. Co., 229 N. Y. 44; Daniel-Morris Co. v. Glens Falls Ind. Co., 308 N. Y. 464.) Thus, there could be no recovery as third-party beneficiary against Continental, the surety on the bond, much less so against Security, who was not even a surety on the bond, but merely an indemnitor of the surety. Nor can the transaction of November 18, 1958 between Security and Continental in regard to collateral security under the separate indemnity agreement be viewed, as plaintiff contends, as a modification of the bond converting it into a payment bond.
Plaintiff’s major contention is that the transaction of November 18,1958 was one made for its benefit, and that as third-party beneficiary it is entitled to a judgment against Security for the work performed, payable out of the funds on deposit with Continental. However, viewing Continental as the promisee, plaintiff does not show any obligation running from the promisee to itself of the kind set forth in Seaver v. Ransom (224 N. Y. 233). Nor does a promise run directly to plaintiff as in Rector, etc., St. Mark’s Church v. Teed (120 N. Y. 583). Even more basically, it does not appear that the November 18, 1958 transaction was intended to benefit the plaintiff; It is true that plaintiff’s witness, Mr. Weckorle, the Secretary of the Nassau County Planning Commission, testified that Mr. Levy, the President of Security, told him in substance that money had been posted with Continental to guarantee these improvements that had to be done. However, it is clear that the $24,200 cash was deposited with Continental as collateral security under the indemnity agreement, and plaintiff’s witness Mr. Bates, resident Vice President of Continental, so testified. Thus, Continental had the right to retain these funds for its own protection until the bond was discharged by the county. Mr. Bates testified that Security’s letter, which tendered the cash on condition that Continental would cause the cost of installation *932 of the drainage and street paving to be paid out of it, did not exactly satisfy him and that he dictated another letter to cover the transaction. This letter did not bind Continental to so disburse the funds. It authorized it to do so at Security’s direction. Without such authorization Continental would have no right in the funds except to hold them as collateral security for its own protection. Mr. Bates testified as to this transaction that Mr. Levy, of Security, requested that he be permitted to use this collateral to pay the cost of the work as it progressed, “ And I had no objection to that. As long as he wanted to use this money to pay for the completion of the job, it was all right with me.” This was understandable, for if the work were performed Continental would have no obligation as surety of the bond. Thus, Security could not obligate itself to pay for street paving out of these funds; Continental had a right to retain these funds for its own protection until the bond was discharged. Further, it is clear that no payments could be made by Continental except on the express direction of Security. Thus, Security could not so use the funds unless Continental agreed; nor could Continental disburse them unless Security approved. Such a transaction is not one which shows an intent to bind Security to use these funds to pay one in plaintiff’s position.
It might be that if Security induced plaintiff to contract with Rowan in reliance on the fact that money had been posted with Continental to assure its payment, that Security would be estopped to show the true nature of the November 18, 1958 transaction. However, there is no evidence to establish such fact. Even if Security were so estopped, Continental could insist on retaining the collateral security for its protection until the bond is discharged, and by defending this action it does so insist.
Plaintiff’s other contention is that both Continental and Security will be unjustly enriched unless it is paid for the street paving out of these funds. However, these funds were never the plaintiff’s. They belonged to Security and were deposited with Continental for its protection. Defendants have not become possessed of any money or property belonging to plaintiff, and there is no showing of any inequitable conduct on their part. (Miller v. Schloss, 218 N. Y. 400.) Nor can the action be viewed as one for the reasonable value of services rendered to defendants. The services were rendered to Rowan Realty Corp. under an express contract. Plaintiff’s right to be paid exists against Rowan. In essence, plaintiff’s contention would convert the performance bond into a payment bond, with Security as surety *933 as well as Continental, and would obligate both, to pay any contractor who performed work; for it is based on the theory that any work performed prevented the principal (Rowan) from being in default, and thus enriched the defendants who would otherwise be liable on the bond to the county. As held above, this was not the nature of the bond. The complaint is dismissed and judgment is for the defendants.