OPINION OF THE COURT
C. Stephen Hackeling, J.
The plaintiff, Land Power Equipment, LLC, commenced this action seeking to recover $5,539.88 for mechanic services *1048 rendered to the defendant’s (Roman Business Corp.) Daewoo skid steer loader. The defendant interposed an answer containing an affirmative defense that the plaintiff ‘s violation of section 398-d of the Vehicle and Traffic Law nullifies any contractual obligation between the parties. The defendant also advances a negligent/sham repair affirmative defense.
Undisputed Facts
The relevant undisputed facts presented to the court are that the parties had an existing long-standing customer relationship when the defendant brought its 2003 Daewoo skid steer loader machine in for a repair check of a hydraulic leak and motor knocking on September 19, 2005. The defendant picked up the machine on September 24, 2005, conditioned upon the tender of a $5,539.88 check, and stopped payment upon its check the day after tendering same.
Disputed Facts
The defendant contends that all it asked for was a repair estimate, that the repairs were performed without being given an estimate and were without its authorization, and alternatively that said repairs were a “sham” as no repairs were performed. The plaintiff asserts that several of its employees gave an oral estimate via the telephone that an engine rebuild would cost between $4,500 and $5,000, and that Marc Amato, an employee of the defendant, approved same and verbally authorized the repair.
Discussion
Prior to addressing the defendant’s Vehicle and Traffic Law § 398-d defense, the court must adjudicate the parties’ disparate factual assertions. The defendant’s alternative contentions that no employee authorized a repair and that no repair occurred are not credible when confronted by the plaintiffs three witnesses who testified that an oral estimate was given and that an authorization to repair was received. The plaintiffs witness who testified that he actually gave the final $4,500-$5,000 estimate is no longer plaintiff’s employee (as such is disinterested in the lawsuit’s outcome) and could point to his handwritten notation of the defendant’s phone number and person with whom he spoke. This, when coupled with the fact that the defendant actually tendered a check for $5,539.88 without protest, compels the court to adopt the plaintiffs version of events as credible. It *1049 appears from the different handwriting on the defendant’s check (exhibit 2) that the defendant’s owner, Gregory Amato, signed a blank instrument and let his son fill in the dollar amount upon picking up the equipment. The court rejects the defendant’s claim that the repair was a sham as the record is devoid of any expert testimony or disinterested nonconelusory proof regarding same. The record also contains no evidence of a prior negligent repair.
Vehicle and Traffic Law § 398-d
In the case at bar, the plaintiff acknowledges its status as a motor vehicle repair shop (hereafter MVRS) and the requirement that it comply with Vehicle and Traffic Law § 398-d. The defendant’s Vehicle and Traffic Law § 398-d defense is problematic, as this statute provides the following in pertinent part:
“1. All work done by a motor vehicle repair shop shall be recorded on an invoice and shall describe all service work done and parts supplied. If any used parts are supplied, the invoice shall clearly state that fact. If any component system installed is composed of new and used parts, such invoice shall clearly state that fact. . . [T]he invoice shall clearly state whether such parts were manufactured as original equipment parts for the vehicle, or were manufactured as non-original replacement parts or are used parts. One copy of the invoice shall be given to the customer . . . [E]very customer and his representative . . . shall have a right to inspect the repaired motor vehicle. Such right of inspection shall also include the right to inspect all replaced parts and components thereof, except warranty or exchange parts . . . The motor vehicle repair shop shall make available to the customer, upon timely written demand, or for such work authorized over the telephone, shall keep until the customer’s motor vehicle is retrieved, all replaced parts, components or equipment excepting any parts, components or equipment normally sold on an exchange basis or subject to a warranty.
“2. Upon the request of any customer, a motor vehicle repair shop shall make an estimate in writing of the parts and labor necessary for a specific job and shall not charge for work done or parts supplied in excess of the estimate without the consent of such customer . . . [T]he estimate shall clearly state *1050 whether such parts were manufactured as original equipment parts for the vehicle, or were manufactured as non-original replacement parts are used parts.” (Emphasis added.)
Having determined that the plaintiff gave an oral estimate and the defendant authorized same without requesting a written estimate, the court need not address the issues of plaintiffs compliance with Vehicle and Traffic Law § 398-d (2), and limits inquiry to the requirements of section 398-d (1). It is clear from a review of the plaintiffs invoice that it does not contain all of the items described in Vehicle and Traffic Law § 398-d (1). Exhibit 1 does little more than quote an overall “engine re-build job” of $5,100 plus $439.88 of sales tax. The required repair detail involving specific services and parts is absent. The court is cognizant that the appropriate detail is contained in exhibit 2, but these documents were not tendered to the defendant.
After the establishment of a section 398-d (1) violation, the question is the consequence thereof. Case law on the issue is limited. The only other relevant reported case which addressed a similar MVRS issue under the predecessor statute held that a violation of Regulations of the Commissioner of the Department of Motor Vehicles (15 NYCRR) § 82.5 (b) (which requires the invoice to indicate thereon the date, time and manner of authorization, and by whom such authorization was given) did not prevent enforcement of an oral contract for repair services.
“Since the statute itself does not prohibit an oral contract for repairs; nor does it require an oral work order to contain the ingredients of regulation 82.5 (b), it cannot be said that a failure to indicate on the invoice the date, time and manner of authorization and by whom such authorization was given, is an act either malum in se or malum prohibitum. Therefore, if the court finds that there was an oral contract, it would be enforceable in spite of the requirements spelled out in regulation 82.5 (b).” (Hammerstein v Potamkin Cadillac Corp., 97 Misc 2d 786, 788 [Civ Ct, Queens County 1979].)
In Hammerstein, the court found that the only consequence of the dealer’s violation of regulation 82.5 (b) was the creation of a “permissive presumption” that no oral authorization for repairs was given to the dealer, effectively shifting the burden of proving same onto the dealer. (Hammerstein v Potamkin Cadillac Corp. at 788.)
This court concurs with the Hammerstein court’s logic that a violation of the MVRS invoice/estimate disclosure provisions *1051 does not void the parties’ contract in the absence of an express statutory declaration of same. Instead, it appears that the Legislature created the alternative remedy of allowing for a section 398-e repair shop license revocation hearing before the Commissioner of Motor Vehicles. The statutory scheme of 15 NYCRR 82.6 provides for civil penalties and restitution in connection with proceedings before the Commissioner of Motor Vehicles. Moreover, the Appellate Division has stated that “there is no private remedy available to the plaintiff pursuant to 15 NYCRR 82.5 (b) and 82.5 (g) (see, 15 NYCRR 82.6)” (Longariello v Getty Petroleum Corp., 207 AD2d 870, 870 [1994]).*
In the instant case, the testimony of a disinterested witness, corroborated by two additional witnesses, and the tender of a check in full payment raised the proof to such a level that the presumption was sufficiently rebutted. The court finds that an authorization, sufficient to establish a contract under New York law was procured. (See generally Watts v Thomas Carter & Sons, Inc., 207 App Div 656 [2d Dept 1924] for contractual requirements.) This contract is enforceable in the absence of a statutory prohibition or case law prohibiting a mechanic’s or dealer’s recovery for repairs on the grounds that he violated 15 NYCRR 82.5.
In this instance, the implied agreement, subject to the limitation inherent in the section 398-d estimate authorization, was for the plaintiff to conduct the necessary repairs at the customary rate. (See generally Miller v Schloss, 218 NY 400 [1916].) Exhibit 2 establishes that rate as $85 per hour plus the cost of parts. It is detailed therein that the plaintiff rendered 25 hours of labor rebuilding the engine, plus 10 hours removing and installing same and $2,125.01 in parts. The court is disallowing the 10 hours of removal/installation fees as the job was quoted only as an “engine rebuild.” It is noted that the $2,125 for labor and the $2,125.01 for parts combines for a $4,250.01 bill *1052 which was consistent with the alleged oral $4,500 estimate. Absent detailed testimony, the assertion that 35 hours of labor was rendered over a four-day period (19th — 23rd) is suspect.
Accordingly, the Clerk of the court is directed to enter judgment against the defendant, Roman Business Corp., only in the sum of $4,250.01 plus costs and interest from the complaint date. The record contains no evidence which would impute personal responsibility to the defendant’s employee.

 The only other reported case dealing with a violation of Vehicle and Traffic Law § 398-d was General Motors Acceptance Corp. v Chase Collision (140 Misc 2d 1083 [Sup Ct, Suffolk County 1988]). This case is readily distinguishable as therein the court held the plaintiff could not enforce its lien due to its failure to prove it was a registered repair shop, as Lien Law § 184 requires. There the court also found that the garageman failed to comply with Lien Law § 184, which mandates that the garageman establish that the car owner gave his consent or authority to proceed with any repairs. Specifically, the written “authorization” therein was incomplete and missing a very essential term, the “cost of repair.” The absence of this term rendered the written contract nonbinding.