NATHAN J. MILLER et al., Respondents, *v.* HARRY B. SCHLOSS, Appellant.

Implied contracts — different classes thereof defined and distinguished — when plaintiff cannot recover under an alleged implied contract of defendant to repay money had and received.

1. There are two classes of implied contracts. The one class consists of those contracts which are evidenced by the acts of the parties and not by their verbal or written words — true contracts which rest upon an implied promise in fact. The second class consists of contracts implied by the law where none in fact exist, *quasi* or constructive contracts created by law and not by the intentions of the parties. A contract cannot be implied *in fact* where the facts are inconsistent with its existence; or against the declaration of the party to be charged; or where there is an express contract

covering the subject-matter involved; or against the intention or understanding of the parties; or where an express promise would be contrary to law. The assent of the person to be charged is necessary, and unless he has conducted himself in such a manner that his assent may fairly be inferred he has not contracted.

2. A *quasi* or constructive contract rests upon the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another. In truth it is not a contract or promise at all. It is an obligation which the law creates, in the absence of any agreement, when and because the acts of the parties or others have placed in the possession of one person money, or its equivalent, under such circumstances that in equity and good conscience he ought not to retain it, and which *ex æquo et bono* belongs to another. Duty, and not a promise or agreement or intention of the person sought to be charged, defines it. It is fictitiously deemed contractual, in order to fit the cause of action to the contractual remedy.

3. This action is brought to recover a sum of money upon what is claimed to be an implied contract. Plaintiffs were cotton traders and members of the New York Cotton Exchange. Defendant secured orders to be executed on the exchange which he gave to the plaintiffs for execution. The claim of the plaintiffs is that the defendant owed them a sum which he was unable to pay. The plaintiffs owed to a third party, a customer obtained by defendant, a sum which the customer was demanding of them and the defendant was directing them to pay. The plaintiffs paid to the defendant the moneys they owed this third party upon the conditions, as plaintiffs insist, that the defendant repay it forthwith to them in part cancellation of his indebtedness to them, and that they take care of the claim of said third party. Plaintiffs brought this action, in which a verdict was rendered in favor of the defendant, but, on appeal of plaintiffs, such judgment was reversed by the Appellate Division. The appeal presents the question of law whether or not the facts presented and the reasonable inferences from them advantageous to the appellant constitute an issue of fact. *Held*, that whatever remedy the plaintiffs may have had against the defendant, it was not the equitable one of an action to recover as and for moneys had and received. The judgment appealed from should be reversed and the case remitted to the Appellate Division to enable it to pass upon the questions of fact presented by the appeal.

*Miller* v. *Schloss*, 159 App. Div. 704, reversed.

(Argued March 23, 1916; decided June 6, 1916.)

APPEAL from a judgment, entered February 7, 1914, upon an order of the Appellate Division of the Supreme Court in the first judicial department, reversing a judgment in favor of defendant entered upon a verdict and directing judgment in favor of plaintiffs.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Edward L. Blackman* and *Edmund Patten Glover* for appellant. The law will never imply a promise which is contrary to or inconsistent with an express agreement of the parties, and the trial court properly submitted to the jury the question whether there was such an express agreement between the plaintiffs and defendant that no other and different agreement could be implied. (*Galvin* v. *Prentice,* 45 N. Y. 162; *Andrews* v. *D. B. Co.,* 132 N. Y. 348; *Ætna Nat. Bank* v. *Fourth Nat. Bank,* 46 N. Y. 82; *Whiting* v. *Sullivan,* 7 Mass. 107; *Mass. Gen. Hosp.* v. *Fairbanks,* 129 Mass. 78; *Keith* v. *De Bussigney,* 179 Mass. 255; *Hawkins* v. *U. S.,* 96 U. S. 689; *Municipal Water Works Co.* v. *City of Fort Smith,* 216 Fed. Rep. 431; *Third Nat. Bank* v. *Rice,* 161 Fed. Rep. 822.) Defendant received no money from any source, and, therefore, an action for money had and received will not lie against him. (*National Trust Co.* v. *Gleason,* 77 N. Y. 40; *Carroll* v. *Chauncey,* 132 App. Div. 12; *Murphy* v. *Lindstedt,* 142 App. Div. 777; *Hendrick* v. *Goodrich,* 15 Wis. 679; *Budd* v. *Huyler,* 27 N. J. L. 43; *Libby* v. *Robinson,* 79 Me. 168; *Wharton* v. *Walker,* 4 B. & C. 163; *Lee* v. *Merrett,* L. R. [8 Q. B.] 819; *Cobb* v. *Becke,* L. R. [6 Q. B.] 940; Keener on Quasi Contracts, 139.)

*Walter H. Pollak* for respondents. The defendant, upon the circumstances of the case, is obliged by the ties of natural justice and equity to refund the money. (*Moses* v. *Macferlan,* 2 Burr, 1005; *Putnam* v. *Field,* 103 Mass. 556; *Wheelock* v. *Hastings,* 4 Metc. 504; *Emerson* v. *Bayliss,* 19 Pick. 55; *Langley* v. *Warner,* 3 N. Y. 327;

*Earle* v. *Whiting,* 196 Mass. 371; *Cole* v. *Bates,* 186 Mass. 584; *Metropolitan Life Ins. Co.* v. *Mayer,* 168 App. Div. 828; *Gilson* v. *Boston Realty Co.,* 82 Conn. 383; *Stoakes* v. *Larson,* 108 Minn. 234; *Williams* v. *Smith,* 29 R. I. 562.)   The contention that defendant is not liable because he received no money is utterly without merit.   The credit of the Hunt account was the equivalent of money. (*Bleecker* v. *Balje,* 138 App. Div. 706; *Putnam* v. *Field,* 103 Mass. 556; *Wheelock* v. *Hastings,* 4 Metc. 504; *Emerson* v. *Baylies,* 19 Pick. 555; *Langley* v. *Warner,* 3 N. Y. 327.)

COLLIN, J.   The action is to recover the sum of $6,830. The jury rendered a verdict in favor of the defendant. The Appellate Division, upon the appeal of the plaintiffs, reversed the judgment entered upon the verdict and ordered a judgment in their favor for the sum sought to be recovered.   From the judgment ordered by the Appellate Division, the defendant appealed to this court.   The appeal presents the question of law whether or not the facts presented and the reasonable inferences from them, advantageous to the appellant, constitute an issue of fact.   (*Faber* v. *City of New York,* 213 N. Y. 411.)

The following facts have support in the evidence: In 1903 and 1904, the plaintiffs (or their predecessors and assignors) were cotton brokers and members of the New York Cotton Exchange.   The defendant secured orders to be executed on the exchange, which he gave to the plaintiffs for execution.   The commissions were divided between the parties.   Prior to March 25, 1904, the plaintiffs did not in their books of account recognize the customers of the defendant, but treated the defendant as their customer, placing in accounts with him all the transactions through the orders received from him. Subsequent to January, 1904, there were two accounts in those books known respectively as " H. B. Schloss & Co." or as " Account number 1 " and " H. B. Schloss & Co.

No. 2 " or as "Account number 2." Account number 1 resulted almost entirely from orders received from one Barrett. Account number 2 resulted wholly from orders received from one Hunt. Such facts were known to the plaintiffs on and prior to March 25, 1904. The defendant advised the plaintiffs with each order in which account it should be entered. The accounts were treated by the parties as though they were with different individuals, the defendant being called upon to make good a balance against him in either, although in the other there might be a balance in his favor. On March 25, 1904, there was in "account number 1" a balance against him, which, as the plaintiffs knew, neither he nor the customer, Barrett, through whose orders it resulted, was able to pay. "Account number 2" was practically even or without a balance. On that date the defendant received from Hunt an order for the purchase of one thousand bales of cotton. Before the defendant would place the order with the plaintiffs or give them any participation in the account arising from it, and on March 25, 1904, the plaintiffs and the defendant agreed that the account number 2, in which such account should be placed and kept, should be kept separate and distinct, and should not be mixed up in any way with the balance against the defendant in account number 1. Thereupon the defendant delivered the transaction or account to the plaintiffs. During the days intervening March 25th and March 29th, upon the requests of the plaintiffs, in part directly to Hunt and in part to the defendant and by him communicated to Hunt, as margin or for the protection of account number 2, Hunt transferred to the plaintiffs $4,000, which was placed as a credit in account number 2. On March 29th the one thousand bales of cotton were sold or closed out and from the avails of the sale and the $4,000 there was a credit to the defendant in account number 2 of about $6,545. The plaintiffs knew at that time that the credit was created by the deposits made by

Hunt and the purchase and sale of the one thousand bales of cotton for him.

On March 30th Hunt directed the plaintiffs to deposit $2,000 to his credit in the American Exchange Bank. They replying that they had no account with him on their books did not comply. On that date they took and thereafter held the position that they would not allow any withdrawal from account number 2 until the defendant had settled the balance against him under account number 1. The defendant insistently claimed that such position was unlawful; that the distinct agreement was that account number 2 should be kept separate and distinct, and that the credit in it was the property of Hunt alone, and for it the plaintiffs were liable to him. After protracted disputation and negotiation, through which the parties were firm in their respective positions, a transaction or settlement was had between them on April 27, 1904, in which the balance against the defendant in account number 1 and his indebtedness to the plaintiffs was wholly discharged upon the books of the plaintiffs by, in part the application to it of the credit in account number 2 and in part by moneys, in the sum of about $8,000, paid to the plaintiffs by parties other than the defendant, and the plaintiffs delivered to defendant a general release of his liability to them. The defendant then stated to the plaintiffs that they had not the right to appropriate to the payment of his indebtedness the credit in account number 2 belonging to Hunt, and expressed to them his belief that Hunt would sue them for the amount of it. The plaintiffs replied that they would make the appropriation and take care of any suit begun by Hunt. They had stated to him some days before that they needed the money. The defendant declared to them and they knew that he was unable to pay Hunt. Subsequently, Hunt recovered, in an action brought, a judgment against the plaintiffs for the amount of such credit. The plaintiffs paid the judgment and brought this

action to recover the sum so paid. Their cause of
action, as alleged, is that they paid the sum to the
defendant upon his promise to pay it "in extinguishment
of a liability for said amount due from the said firm of
Miller & Company to one C. P. Hunt and in considera-
tion of said promise," which promise he had failed to keep;
that they through compulsion of a judgment had been
forced to pay such amount to Hunt and that the defend-
ant holds the sum so paid him to their use. The trial
court charged the jury that if the defendant, as a part of
the transaction of April 27, 1904, agreed, expressly or
impliedly, to pay Hunt the sum of the credit in account
number 2, or if the plaintiffs were then ignorant that
Hunt was the principal in account number 2 or had any
interest therein, the defendant was liable.

. The Appellate Division recognized and declared that
the action was for moneys had and received. That court
reversed the judgment of the trial court and directed
judgment in favor of the plaintiffs upon the ground that
the defendant promised, through implication, as a matter
of law, to pay Hunt the sum of the credit in account num
ber 2, which was appropriated on the books of the plain-
tiffs in payment of the indebtedness of the defendant to
them. The evidence presented an issue of fact. The law
defining the nature and the obligations of implied con-
tracts is thoroughly established. The courts recognize by
the language of their opinions two classes of implied con-
tracts. The one class consists of those contracts which
are evidenced by the acts of the parties and not by their
verbal or written words — true contracts which rest upon
an implied promise in fact. The second class consists of
contracts implied by the law where none in fact exist —
*quasi* or constructive contracts created by law and not by
the intentions of the parties. A contract cannot be
implied *in fact* where the facts are inconsistent with its
existence; or against the declaration of the party to be
charged; or where there is an express contract covering

'the subject-matter involved; or against the intention or understanding of the parties; or where an express promise would be contrary to law. The assent of the person to be charged is necessary and unless he has conducted himself in such a manner that his assent may fairly be inferred he has not contracted. (*Morse* v. *Kenney,* 87 Vt. 445; *Mathie* v. *Hancock,* 78 Vt. 414; *Hertzog* v. *Hertzog,* 29 Pa. St. 465; *Earle* v. *Coburn,* 130 Mass. 596; *Central Bridge Corporation* v. *Abbott,* 4 Cush. 473.) Under the law and the stated facts it obviously cannot be held as a matter of law that the defendant is liable to the plaintiffs for the sum recovered by reason of his promise or contract implied in fact that he would pay them. In fact, neither the complaint nor the trial proceeded upon that cause of action.

Nor can the law find in the stated facts a *quasi* contract, or an implied contract *in law,* on the part of the defendant that he would pay the plaintiffs. A *quasi* or constructive contract rests upon the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another. In truth it is not a contract or promise at all. It is an obligation which the law creates, in the absence of any agreement, when and because the acts of the parties or others have placed in the possession of one person money, or its equivalent, under such circumstances that in equity and good conscience he ought not to retain it, and which *ex æquo et bono* belongs to another. Duty, and not a promise or agreement or intention of the person sought to be charged, defines it. It is fictitiously deemed contractual, in order to fit the cause of action to the contractual remedy. (*Board of Highway Commissioners* v. *City of Bloomington,* 253 Ill. 164; *Morse* v. *Kenney,* 87 Vt. 445; *Columbus, etc., Ry. Co.* v. *Gaffney,* 65 Ohio St. 104.) In *People ex rel. Dusenbury* v. *Speir* (77 N. Y. 144, 150) we said: "There is a class of cases where the law prescribes the rights and liabilities of persons who have not in real-

ity entered into any contract at all with one another, but between whom circumstances have arisen which make it just that one should have a right, and the other should be subject to a liability similar to the rights and liabilities in certain cases of express contract. Thus, if one man has obtained money from another, through the medium of oppression, imposition, extortion, or deceit, or by the commission of a trespass, such money may be recovered back, for the *law* implies a promise from the wrong-doer to restore it to the rightful owner, although it is obvious that this is the very opposite of his intention. Implied or constructive contracts of this nature are similar to the constructive trusts of courts of equity, and in fact are not contracts at all. (Addison on Contracts, 22.) And a somewhat similar distinction is recognized in the civil law, where it is said: ' In contracts it is the consent of the contracting parties which produces the obligation; in *quasi* contracts there is not any consent. The law alone, or natural equity produces the obligation by rendering obligatory the *fact* from which it results. Therefore these facts are called *quasi* contracts, because without being contracts, they produce obligations in the same manner as actual contracts.' (1 Pothier on Obligations, 113.)" In the cases cited and in other cases will be found many illustrations of the application of the principle under consideration.

The principle has no application here. It must have as a basis, in order to be applicable, the facts that the plaintiffs paid to the defendant and the defendant retained the sum of $6,380 or thereabouts in order that he should pay it to Hunt. The fact that the defendant should have paid Hunt is essential to the basis. The facts did not or do not exist. Each and every act of the plaintiffs was voluntary and with full and exact knowledge on their part. There was not in the transaction mistake, imposition, extortion or oppression. The entire transaction was covered and is controlled by the express

agreement or understanding of the parties. Hunt had demanded the payment of the sum to himself and the defendant had directed that the sum be so paid. The plaintiffs knew they owed the sum to Hunt, but they needed and desired to keep the moneys. They on their books of account misapplied them to an account existing between themselves and the defendant in reduction of a balance to the debit of the defendant and the credit of themselves. They knew the defendant was not able or did not intend to pay the sum to Hunt. They did not intend that the defendant should pay the sum to Hunt, and expressly declared their intention to take care of the claim of Hunt. They did not place in the hands of the defendant any money or its equivalent. At the close of the transaction he was no more able, and probably less able, as the plaintiffs knew, to pay Hunt, than he was at its commencement. They delivered to the defendant no money or its equivalent which he through any fact was obligated to pay over to Hunt or the plaintiffs. As I have stated, at the close of the transaction the result stood precisely as it did at the commencement of this action (except that the plaintiffs had taken care of the claim of Hunt as they declared they would) and as the parties intended and agreed that it should stand. In it there was no fact through which natural equity or good conscience should obligate the defendant to pay the plaintiffs the sum recovered. Giving it its fullest form and expansion, it would be expressed thus: The defendant owed the plaintiffs a sum which he was unable to pay. The plaintiffs owed Hunt a sum which he was demanding of them and the defendant was directing them to pay. The plaintiffs paid to the defendant the moneys they owed Hunt upon the conditions that the defendant repay it forthwith to them in part cancellation of his indebtedness to them, and that they take care of the claim of Hunt. Whatever remedy the plaintiffs may have had against the defendant, it seems clear

that it was not the equitable one of an action to recover the sum so paid him, as and for moneys had and received.

The judgment appealed from should be reversed and the case remitted to the Appellate Division to enable it to pass upon the questions of fact presented by the appeal from the order denying the plaintiffs' motion to set aside the verdict and for a new trial, with costs to the appellant.

WILLARD BARTLETT, Ch. J., CHASE, CUDDEBACK, SEABURY and POUND, JJ., concur; CARDOZO, J., not sitting.

Judgment reversed, etc.