Van Voorhis, J.
Charles Fulton Oursler had two children by his first wife and two children by his second wife. In 1951 Oursler and his second wife, Grace Perkins Oursler, executed wills at the same time before the same attesting witnesses. His will provided that his residuary estate would go to Grace; but if he survived her it would go to the four children of both his marriages, or their children; the will of Grace provided that her residuary should go to Oursler but, if she survived him, the property coming to her from Oursler would go to the same four children of both marriages, or to their children.
Oursler died in 1952. Grace survived him. On January 21, 1955, in the year of her death, she made a new will which was admitted to probate in which she left everything to her two children and nothing to the children of Oursler’s first marriage. In this action in the Supreme Court the children of the first marriage and their children seek to impress a trust on the property received by Grace under Oursler’s will.
The trial court impressed such a trust on the basis of a promise found to have been made by Grace Oursler that she would deal with the property received by her under her husband’s will so that the children of both marriages would share alike in the property. The Appellate Division affirmed, stating that ‘1 On the whole record we are thus of opinion that Grace took the property by Fulton’s will in a relationship of confidence from which Fulton believed she would dispose of the property ‘ as he would do it himself ’; and that it was the implicit understanding between them that such a distribution was an obligation, based on confidence, which Grace undertook. The imposition of a constructive trust upon the estate of Grace is thus well grounded in equitable principle.” One Justice dissented on the ground that the proof did not support a promise by Grace on which a constructive trust could be founded. We are in accord with the latter view.
Grace may have had a moral obligation to give the property which she inherited from Fulton to all four of the children, but *389 a moral obligation alone is not enough to set the court in motion in a case of this kind (Amherst Coll. v. Ritch, 151 N. Y. 282). The only basis on which a court can intervene is that a promise was made by Mrs. Grace Oursler not to alter or revoke her 1951 will and that by reason of her promise to that effect her husband gave and bequeathed to her what he did. The power to dispose of one’s property by will is not lightly to be denied even if Judges think that the testatrix should have disposed of her estate differently. No express promise or representation was proved in writing or orally to have been made by Grace Oursler that she would not change her testamentary, intent as expressed in the will which she executed contemporaneously with the will of her husband. Nor does the evidence from which such a promise is sought to be implied establish anything more than a 1951 intention on Mrs. Oursler’s part to dispose of her property as she provided by her 1951 will.
The law does not view the renunciation of the right to alter or revoke a will as a casual matter (Matter of Bekker, 283 App. Div. 609) and, regardless of whether the Statute of Frauds (Personal Property Law, § 31, subd. 7) controls this case, as quite possibly it does not (Sinclair v. Purdy, 235 N. Y. 245; Foreman v. Foreman, 251 N. Y. 237; Wood v. Rabe, 96 N. Y. 414; O’Boyle v. Brenner, 189 Misc. 1058, mod. on other grounds 273 App. Div. 683; 278 App. Div. 900, mod. 303 N. Y. 572; Lawrence v. Mildenberger, 30 Misc 2d 1012, affd. 276 App. Div. 1079; Matter of Buehler, 186 Misc. 306, affd. 272 App. Div. 757), the spirit of it as well as the decisional law requires clear evidence of the existence of a promise of this nature (see opinion by Dore, J., in Bayreuther v. Reinisch, 264 App. Div. 138, affd. 290 N. Y. 553; Rubin v. Irving Trust Co., 305 N. Y. 288; Meltzer v. Koenigsberg, 302 N. Y. 523; Matter of Levin, 302 N. Y. 535; West v. Day Trust Co., 328 Mass. 381). In Edson v. Parsons (155 N. Y. 555, 571), after mentioning the similarity in lives, thoughts, emotions and testamentary plan of two elderly maiden sisters whose wills were executed on the same day before the same witnesses, the court said in regard to a subsequent change in the will of the survivor: “Was the surviving sister not to be free, in ail the contingencies of life, with all the possible mutations in her relations to others, or in the worthiness of the destined objects *390 of their bounty, to make such other testamentary dispositions, as might seem wise, or in better accord with her sentiments? These are most serious questions for consideration upon the plaintiff’s appeal to a court of equity for relief.”
The Appellate Division appears to have realized the weakness of the evidence in this record of any binding agreement or promise by Grace Oursler to renounce her future power of testamentary disposition. The opinion at the Appellate Division states that “It is clear that there is no remedy for plaintiffs to be laid in contract; they are unable to show either an enforcible contract by Grace to make a will for their benefit; or an enforcible contract by Grace to assume a trust in their interest. ’ ’ The opinion then states: ‘ ‘ The theory of constructive trust does not depend necessarily upon proof of the actual undertaking of a trust obligation by the party charged. He may have intended to become a trustee, and the proof of his undertaking either is barred by statutory or other rules of evidence, or direct proof of intent may be absent altogether. On the other hand he may have had no intention' at all of becoming a trustee. ’ ’ This is followed by the statement that a constructive trust may embrace situations ‘ ‘ where all reasonable probabilities point to an intended trust which cannot be proved,” as well as ‘ ‘ situations in which equity spells out a trust not at all intended by the trustee.”
0 Thus a constructive trust for the testamentary disposition of assets received from another is equated with a quasi contract implied in law, contrary to actual fact, as thus described in Miller v. Schloss (218 N. Y. 400, 407): “ A quasi or constructive contract rests upon the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another. In truth it is not a contract or promise at all. It is an obligation which the law creates, in the absence of any agreement, when and because the acts of the parties or others have placed in the possession of one person money, or its equivalent, under such circumstances that in equity and good conscience he ought not to retain it, and which ex aequo et bono belongs to another. Duty, and not a promise or agreement or intention of the person sought to be charged, defines it. It is fictitiously deemed contractual, in order to fit the cause of action to the contractual remedy. ’ ’
*391 This is evidently the reasoning behind the statement by the Appellate Division in the case at bar that “ It is the weight of judicial power that imposes the constructive trust; it is a trust fashioned by the moral mandate of equity. ’ ’
This is all very well in instances where a defendant is charged as a trustee ex maleficio without intending to become a trustee in fact in instances where he has misappropriated property belonging to another. It has no application to the present case where no property has been misappropriated and it is admitted that a moral obligation alone is not enough to set a court in motion to compel the devolution of property in a certain way (Amherst Coll. v. Ritch, supra; Oursler v. Armstrong, 8 A D 2d 194,197, citing Wood v. Rabe, supra, p. 421).
Although at one point it was stated that on the whole record 1 ‘ it was the implicit understanding between them that such a distribution was an obligation, based on confidence, which Grace undertook ’’ (8 A D 2d 194, 200), the decision of this appeal depends upon the existence of an actual promise by Grace, express or implied, that she would not afterward change her will. Any conclusion based on analogy with the law of quasi contract is inadmissible. Courts do not have that much power over the devolution of other people’s property. That is made clear by the cases which are cited in support of the existence of a confidential relationship in order to escape the impact of the Statute of Frauds, such as Sinclair v. Purdy (supra) and Foreman v. Foreman (supra), where, in writing the opinion, Judge Cardozo repeated the language used by him at Special Term in Golland v. Golland (84 Misc. 299, 306) that “It is not the promise only, nor the breach only, but the promise and the breach combined with the extortion of property from the owner upon the faith of the engagement, which puts the court in motion.” The existence of a promise, express or implied, is a vital necessity; the mere fact of a confidential relationship is not enough. In the present instance Grace Oursler appropriated no property belonging to others, within the rule of quasi contract. She had the legal right to dispose of her property by will as she chose, unless she obtained her deceased husband’s estate on the strength of a promise that she would bequeath it equally among his four children, in which event only could a constructive trust come into being covering what she inherited from him.
*392 Where a testator has received property from others, now deceased, equity will intervene under certain circumstances to declare the surviving testator a trustee in order to carry out a promise on the strength of which the property has been received (Ahrens v. Jones, 169 N. Y. 555; Amherst Coll. v. Ritch, supra); the existence of a joint will where the same document is signed by both husband and wife has been held to constitute a sufficient basis for the existence of such a promise (Rastetter v. Hoenninger, 214 N. Y. 66; Tutunjian v. Vetzigian, 299 N. Y. 315). An antenuptial contract has been held sufficient to the purpose (Phalen v. United States Trust Co., 186 N. Y. 178). Nevertheless, ¡ ‘ To attribute to a will the quality of irrevocability demands the most indisputable evidence of the agreement, which is relied upon to change its ambulatory nature, and that presumptions will not, and should not, take the place of proof.” (Edson v. Parsons, supra, p. 568; Lally v. Cronen, 247 N. Y. 58, 63; Wallace v. Wallace, 216 N. Y. 28; Matter of Bekker, supra). The same is true of the existence of a promise, express or implied from circumstances, in the case of a constructive trust of the nature sought to be established in this case. Such a promise is not established by the mere confidentiality of the relationship between the persons involved.
None of the testimony adduced to sustain the judgment establishes a promise by Grace Oursler to renounce her power of testamentary disposition. The witnesses Farrar and Denker merely testified to conversations of a general nature, which have no tendency to establish a promise by Grace. The testimony of the attorney, Mr. Morris L. Ernst, indicates that there was a friendly relationship between Fulton and his two children by his first wife. Mr. Ernst did not testify to any promise made by Grace nor did he even testify that the memorandum which Grace sent to him outlining the contents of portions of her 1951 will was .ever seen or mentioned by Fulton Oursler. If the intention had been that Mrs. Grace Oursler was renouncing her power to alter or revoke her 1951 will, as regards the property which she stood to inherit from her husband, it is remarkable that it was not put in writing or even mentioned orally in joint consultation by so experienced and competent a lawyer as Mr. Ernst. Instead of there being a promise to sustain a constructive trust of this land, binding Grace Oursler during the rest of her life *393 to the same testamentary disposition, it is plain that Fulton Oursler gave his property to her by will absolutely believing that in her own good judgment she would do whatever was the right thing. Many another husband has done the same.
The circumstance that Fulton Oursler once discussed the formation of a corporation to do a television production of ‘1 The Greatest Story Ever Told ’ ’ whereas such corporation was never formed has no operative effect, nor the preincorporation agreement embodying an arrangement at one time desired by him. Nothing in the memorandum which Grace Oursler submitted to their attorney, Mr. Ernst, amounts to a promise that she would refrain from later exercising her prerogative of revoking or altering her 1951 will to which it relates. This memorandum has no more probative force than the will itself, the substance of portions of which it incorporates. The mere inclusion of statements that her 1951 will is “as he would wish it ”, or that “ Should he not survive me then I would wish my estate handled as he would wish matters to be handled, except that anything of my own would go directly to my own children and grandchildren, knowing that my husband’s loved ones have been, are and will be well remembered ’ ’, do not alter the situation. She was stating her present wish with regard to the contents of her 1951 will. The mere circumstance that she executed this will contemporaneously with the will of her husband, and that both contained similar provisions with respect to the gift over to Fulton Oursler’s children in 1951, does not constitute an agreement as was recognized by the Appellate Division’s citing Edson v. Parsons (supra) (8 A D 2d 196).
The judgment appealed from should be reversed and the complaint dismissed, with costs in all courts.
Judges Froessel, Burke and Foster concur with Judge Van Voorhis; Chief Judge Desmond and Judges Dye and Fuld dissent and vote to affirm upon the opinion of Justice Bergan in the Appellate Division.
Judgment reversed, etc.