■ In the Matter of the Estate of SADIE GOLD, Deceased. STATE TAX COMMISSION, Appellant; SAM GOLD et al., as Executors of SADIE GOLD, Deceased, et al., Respondents.—In a proceeding to fix the New York estate tax on the estate of Sadie Gold, deceased, the State Tax Commission appeals from an order of the Surrogate's Court, Kings County, dated September 5, 1974, which amended a prior *pro forma* order of the same court, dated June 28, 1971, so as to fix the net New York estate tax at the amount of $116.94. Order modified, on the law, by increasing the amount fixed as the net New York estate tax to $416.94. As so modified, order affirmed, without costs. The findings of fact are affirmed. Decedent, who died on November 8, 1970, was survived by her husband, their two children and two grandchildren (the issue of her predeceased son). Testatrix and her husband both executed a joint and mutual will (one document) which provides that the surviving spouse is to receive the entire estate and that, upon the survivor's death, the estate remaining is to pass to certain named beneficiaries. The State Tax Commission takes the position that, under the will, the surviving husband received only a life estate upon the wife's death and that, accordingly, no marital deduction should be allowed. The Surrogate rejected this theory and determined that the joint and mutual will does not evidence an intention that each party irrevocably gave up the right to alter the provisions of the will. He held that the husband received the entire estate, absolutely and without restriction, and allowed the marital deduction. We concur in the reasoning of the Surrogate. When considering the effect of joint and mutual wills it must be noted that circumstances surrounding the life of the survivor will change after the death of the spouse; events will occur not contemplated at the time of the execution of the joint will. Wills, by their nature, are ambulatory and are not irrevocable (see *Oursler v Armstrong,* 10 NY2d 385; *Edson v Parsons,* 155 NY 555). A surviving spouse may remarry and there may be children of the new marriage. Property subject to the joint will may be destroyed or depleted. Illness and a change in economic circumstances may result in a new life-style for the survivor. This is not to say that spouses may not contractually and irrevocably bind each other to the terms of a specific distribution (see, e.g., *Matter of Ryan,* 61 Misc 2d 390). However, the consequences of an irrevocable document are so severe that the prerequisite contractual intent must be reflected by clear

terms; "to attribute to a will the quality of irrevocability demands the most indisputable evidence of the agreement" *(Edson v Parsons,* supra, p. 568). Neither the will under review nor any circumstances surrounding its execution show a manifestly "clear and unambiguous" intent on the part of the testatrix and her husband to be bound to its terms forever (see *Matter of Aquilino,* 53 Misc 2d 811, 812 [citing *Oursler v Armstrong, supra,* and other cases]). The Surrogate was, therefore, correct in his holding. However, in addition to permitting the marital deduction, the Surrogate also allowed three personal exemptions in the total amount of $300, $100 for each named lineal descendant. When a surviving spouse receives the entire estate unencumbered and absolutely, as here, it follows that the lineal descendants do not receive an indefeasibly vested interest — a necessary prerequisite for an exemption (see *Matter of Cutler,* 3 Misc 2d 44). Accordingly, the order should be modified by disallowing the $300 tax credit and increasing the estate tax accordingly. Gulotta, P. J., Rabin, Martuscello, Latham and Christ, JJ.