In re: FIRST CENTRAL FINANCIAL CORPORATION, Debtor.

Superintendent of Insurance for the State of New York, as Liquidator of First Central Insurance Company, Plaintiff–Appellant,

v.

Martin Ochs, Esquire, a Chapter 7 Trustee of First Central Financial Corporation, First Central Financial Corporation, Defendants–Appellees.

No. 02–5065.

United States Court of Appeals, Second Circuit.

Argued: Nov. 18, 2003.

Decided: July 27, 2004.

William O. Purcell (David Simon and Judith A. Pacitti, on the brief), Kirkpatrick & Lockhart LLP, New York, NY, for Plaintiff–Appellant.

Norman N. Kinel (Melissa Zelen Neier, on the brief), Sidley Austin Brown & Wood LLP, New York, NY, for Defendants–Appellees.

Before: POOLER, B.D. PARKER, and WESLEY, Circuit Judges.

B.D. PARKER, JR., Circuit Judge.

The Superintendent of Insurance for the State of New York, in his capacity as Liquidator of First Central Insurance Company ("FCIC"), appeals from a judgment of the United States District Court for the Eastern District of New York (Denis R. Hurley, *J.*), which affirmed a decision of the United States Bankruptcy Court for the Eastern District of New York (Carla E. Craig, *B.J.*), granting summary judgment to First Central Financial Corporation ("FCFC") and FCFC's Chapter 7 Trustee, Martin Ochs (the "Trustee"). The principal issue on this appeal is whether the Bankruptcy Court and the District Court erred in declining to impose a constructive trust on a tax refund that the Trustee received from the IRS and held as property of FCFC. Such a trust would have kept the refund out of FCFC's estate and would have required it to be paid to FCIC. We hold that because a written agreement exists between FCIC and FCFC covering how taxes were to be allocated, and because FCFC's estate was not unjustly enriched by the Trustee's retention of the refund, a constructive trust is not an appropriate remedy. Consequently, the judgment of the District Court is affirmed.

## BACKGROUND

FCFC is the parent corporation of FCIC, a New York insurance company. In the 1980s, the two companies executed a tax allocation agreement (the "Agreement"), which prescribed how tax charges and refunds were to be apportioned between FCFC and FCIC. From at least as far back as 1993 through 1997, FCFC filed consolidated tax returns on behalf of itself, FCIC, and another wholly-owned subsidiary (collectively, the "group"). The Agreement provided that if any tax refunds were generated, FCIC was entitled to receive at least the amount that it could have claimed on its own behalf had it filed individual returns and claimed refunds on a "stand alone" basis. In 1994 and 1995, FCIC was the only member of the group to earn taxable income and, consequently, paid the group's entire tax liability for those years. After 1995, the group as a whole and FCIC, on a stand alone basis, suffered losses. In 1996 and 1997, FCFC applied for and received refunds of taxes paid by the group in prior years. The IRS sent the refunds directly to FCFC, which then paid them to FCIC pursuant to the Agreement.

In January 1998, FCIC became insolvent and was placed in rehabilitation proceedings under the control of the New York State Department of Insurance. FCFC itself filed for bankruptcy in March 1998. In December 1998, FCFC's Chapter 7 Trustee, Martin P. Ochs, applied to the IRS for a refund of the remainder of the taxes that the group had paid in 1994 and 1995. The IRS sent the Trustee a refund of approximately $2.5 million. Instead of turning over this refund to FCIC as the Agreement required, and as FCFC had done in prior years, the Trustee kept it, claiming that the funds belonged to FCFC's bankruptcy estate. The Superintendent subsequently commenced an adversary proceeding in the Bankruptcy Court seeking a declaration that, because the refund was held in trust for FCIC, it was not property of FCFC's estate. *See* 11 U.S.C. § 541(d).

Following cross-motions for summary judgment, the Bankruptcy Court granted judgment to FCFC and the Trustee. *In re First Cent. Fin. Corp.*, 269 B.R. 481, 491–95 (Bankr.E.D.N.Y.2001). The Court concluded that the refund was not held in trust for two reasons. First, the Agreement itself did not give rise to a trust or agency relationship because it did not re-

quire the refund to be segregated or restricted in use. *Id.* at 495–98.[1] Second, a constructive trust was not warranted under New York law because the relationship between the parties was governed by a written agreement. *Id.* at 499–501. Accordingly, to the extent that FCIC was entitled to any portion of the refund, the Bankruptcy Court's ruling effectively required it to pursue the funds as an unsecured creditor in the bankruptcy proceedings. *Id.* at 502. The Bankruptcy Court also concluded that FCIC was not entitled to the full amount of the refund under the terms of the Agreement, but only to the amount it would have received if it had filed taxes on a stand alone basis. *Id.* at 495. FCIC appealed to the District Court, which affirmed the Bankruptcy Court in all respects. *In re First Cent. Fin. Corp.,* No. 02–CV–397 (E.D.N.Y Sept. 9, 2002). FCIC appeals and we affirm.

## DISCUSSION

A district court's affirmation of a bankruptcy court's judgment is subject to plenary review. *Cody, Inc. v. County of Orange (In re Cody, Inc.),* 338 F.3d 89, 94 (2d Cir.2003). Here, we review conclusions of law *de novo,* and findings of fact under a clearly erroneous standard. *Id.*

Section 541(a)(1) of the Bankruptcy Code provides that the "estate" created by bankruptcy proceedings includes "all legal or equitable interests of the debtor in property [that the debtor holds] as of the commencement of the case." 11 U.S.C. § 541(a)(1). Section 541(d) provides that "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest ... be-

comes property of the estate ... only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." *Id.* § 541(d).

The Superintendent contends that the refund, which resulted from taxes that FCIC alone paid and which was principally generated by FCIC's losses, is being held in constructive trust for FCIC, and consequently is not part of the bankruptcy estate. In making the determination as to whether a constructive trust applies, New York law controls. *In re Howard's Appliance Corp.,* 874 F.2d 88, 93 (2d Cir.1989).

New York law generally requires four elements for a constructive trust: "(1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer of the subject *res* made in reliance on that promise; and (4) unjust enrichment." *United States v. Coluccio,* 51 F.3d 337, 340 (2d Cir.1995); *see also Bankers Sec. Life Ins. Soc'y v. Shakerdge,* 49 N.Y.2d 939, 940, 428 N.Y.S.2d 623, 406 N.E.2d 440 (1980); *Simonds v. Simonds,* 45 N.Y.2d 233, 241–42, 408 N.Y.S.2d 359, 380 N.E.2d 189 (1978). The fourth element is the most important since "the purpose of the constructive trust is prevention of unjust enrichment." *Simonds,* 45 N.Y.2d at 242, 408 N.Y.S.2d 359, 380 N.E.2d 189; *see also Counihan v. Allstate Ins. Co.,* 194 F.3d 357, 361 (2d Cir.1999) ("[A constructive trust's] purpose is to prevent unjust enrichment."); *In re Koreag, Controle et Revision S.A.,* 961 F.2d 341, 354 (2d Cir.1992) (stating that unjust enrichment constitutes the "key factor" in determining whether a constructive trust should be imposed).

---

1. On appeal, the Trustee argues that the Bankruptcy Court correctly concluded that the refund was an asset of the estate because, in part, the Agreement itself did not create a trust relationship between FCFC and FCIC.

Since the Superintendent only appeals the Bankruptcy Court's decision not to impose a constructive trust, we do not reach the question of whether any trust apart from a constructive trust exists.

■ Whether a party is unjustly enriched is a legal conclusion. *See Brand v. Brand,* 811 F.2d 74, 81 (2d Cir.1987) ("A conclusion that one has been unjustly enriched is essentially a legal inference drawn from the circumstances surrounding the transfer of property and the relationship of the parties.") (internal quotation marks and citation omitted). We therefore review *de novo* the Bankruptcy Court's conclusion that the retention of the tax refund in FCFC's estate results in no unjust enrichment.

## A. The Existence of a Valid and Enforceable Contract

A threshold question for us is whether a constructive trust is an appropriate remedy when the rights of the parties are structured by a written agreement. The Bankruptcy Court concluded that it was not: "In the absence of a tax allocation agreement, the Superintendent might be correct that retention of the Tax Refund would unjustly enrich the bankruptcy estate of FCFC. However, FCFC and FCIC did enter into the Tax Allocation Agreement, which governs their respective rights and responsibilities." *In re First Cen. Fin. Corp.,* 269 B.R. at 500 (internal citations omitted).

The test for unjust enrichment was promulgated in *Miller v. Schloss,* 218 N.Y. 400, 113 N.E. 337 (1916), which held that unjust enrichment would only exist where no prior agreement governed the rights of the parties: "A quasi or constructive contract . . . is an obligation which the law creates, *in the absence of any agreement,* when and because the acts of the parties or others have placed in the possession of

one person money, or its equivalent, under such circumstances that in equity and good conscience he ought not to retain it." *Id.* at 407, 113 N.E. 337 (emphasis added). For quasi-contractual claims, this principle has become formalized into a rule that generally bars a finding of unjust enrichment in the face of a valid and enforceable written agreement. For example, in *Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.,* 70 N.Y.2d 382, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987), the New York Court of Appeals held that "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Id.* at 388, 521 N.Y.S.2d 653, 516 N.E.2d 190. In *MacDraw, Inc. v. CIT Group Equip. Fin., Inc.,* 157 F.3d 956 (2d Cir.1998), we recognized this rule as one of the "well-settled principles of New York law." *Id.* at 964. In *In re Chateaugay Corp.,* 10 F.3d 944 (2d Cir.1993), we applied this rule to find that a plaintiff's "successful assertion of its contractual right" to certain funds was "fatal to any quasi contractual claim." *Id.* at 958.[2]

■ Although *Schloss* specifically addressed "quasi or constructive contracts," we conclude that this principle—that the existence of a written agreement precludes a finding of unjust enrichment—also applies to constructive trust claims for two reasons. First, the distinction under New York law between quasi-contractual remedies and constructive trust remedies has disappeared and is now viewed as historical and technical in nature rather than substantive. *See Equity Corp. v. Groves,* 294 N.Y. 8, 13, 60 N.E.2d 19 (1945) ("A

**2.** *See also Apfel v. Prudential–Bache Sec., Inc.,* 81 N.Y.2d 470, 479, 600 N.Y.S.2d 433, 616 N.E.2d 1095 (1993) (rejecting unjust enrichment claim because a written agreement controlled the transaction); *Golub Assoc., Inc. v.*

*Lincolnshire Mgmt., Inc.,* 1 A.D.3d 237, 767 N.Y.S.2d 571, 572 (2003) (same); *Smith v. Pagano,* 154 A.D.2d 586, 546 N.Y.S.2d 415, 416 (1989) (same).

constructive trust ... is analogous to a 'quasi-contractual obligation' and indeed the subject is treated by the American Law Institute in a separate restatement in connection with the subject of Quasi Contracts rather than in connection with the Restatement of the Law of Trusts.") (internal quotation marks and citations omitted); *Schloss*, 218 N.Y. at 408, 113 N.E. 337 ("Implied or constructive contracts of this nature are similar to the constructive trusts of courts of equity.").[3] Accordingly, the principles that apply to quasi-contractual remedies also apply to constructive trusts. *See* Scott, The Law of Trusts 4th ed. § 461 ("The general principles with reference to unjust enrichment that are the basis of constructive trusts ... are also at the basis of quasi-contractual obligations.").

Second, courts have subsequently extended *Schloss* to supply the rule of decision for finding unjust enrichment in constructive trust cases. For example, in *Brand*, we considered a request to impose a constructive trust on assets for the benefit of two brothers following the death of their father. Relying on *Schloss*, we found unjust enrichment because the "appellant [held] title to property 'under such circumstances that in equity and good conscience he ought not to retain it.'" 811 F.2d at 81 (quoting *Schloss*, 218 N.Y. at 407, 113 N.E. 337). *In the Matter of Wieczorek*, 186 A.D.2d 204, 587 N.Y.S.2d 755 (1992), relied on *Schloss* for the proposition that "[t]he ultimate purpose of a constructive trust is to prevent unjust enrichment and it will be imposed where a party holds property 'under such circumstances that in equity and good conscience he ought not to retain it.'" *Id.* at 756. Although these decisions only applied the "good conscience and equity" test of *Schloss*, discussion of the requirement of the absence of an agreement was not necessary since it was not at issue in those cases. Nevertheless, because the reasoning of *Schloss* has been repeated with respect to its "agreement" principle *and* in the context of constructive trust claims, we conclude that its "agreement" principle applies to constructive trusts.[4]

---

3. *See also House v. Schwartz*, 18 Misc.2d 21, 188 N.Y.S.2d 308, 335 (N.Y.Sup.Ct.1959) ("[C]ourts have historically prevented unjust enrichment by employing a legal fiction: common law courts used the term 'quasi contract,' and courts of equity, 'constructive trust.' The two are essentially the same ... in decreeing specific performance of a contract implied in law or quasi contract.") (internal citations omitted); *Heaslip v. Barnshaw*, 129 N.Y.S.2d 433, 435 (N.Y.Sup.Ct. 1954) ("A constructive trust bears much the same relation to an express trust that a quasi-contractual obligations bears to a contract. In the case of a constructive trust, as in the case of a quasi-contract, an obligation is imposed not because of the intention of the parties, but in order to prevent unjust enrichment.") (quoting 3 Scott on Trusts § 462.1 (1939) and Restatement, Restitution, § 160, comment a (1937)); *cf. Oursler v. Armstrong*, 10 N.Y.2d 385, 390, 223 N.Y.S.2d 477, 179 N.E.2d 489 (1961) ("Thus a constructive trust for the testamentary disposition of assets received from another is equated with a quasi

contract implied in law, contrary to actual fact, as ... described in *Miller v. Schloss*.") (internal citation omitted).

4. Indeed, the existence of a written agreement has already been held by a number of courts in this Circuit to bar a constructive trust. *See, e.g., Briggs v. Goodyear Tire & Rubber Co.*, 79 F.Supp.2d 228, 236–37 (W.D.N.Y.1999) ("Where there exists a valid and enforceable written contract governing a particular subject matter, quasi contractual claims, including claims for unjust enrichment and constructive trust are not allowed.... Settled law indicates that the equitable claims of unjust enrichment and constructive trust are unavailable where plaintiffs have rights under a valid and enforceable contract.") (internal quotation marks and citations omitted); *In re Stylesite Mktg., Inc.*, 253 B.R. 503, 507–508 (Bankr.S.D.N.Y.2000) (holding that the existence of a "valid contract" "bars the imposition of a constructive trust" because "quasi-contractual claims such an unjust enrichment

FCIC suggests, however, that New York courts do not strongly adhere to the "agreement" principle. Superficially, it might appear that the New York Court of Appeals has relaxed this principle in the matrimonial context, insofar as it has permitted constructive trusts for the benefit of first wives when husbands breached contractual obligations to maintain life insurance policies naming them as beneficiaries. For example, in *Simonds*, a husband, as part of a separation agreement and divorce decree, promised to maintain life insurance policies naming his former wife as beneficiary. 45 N.Y.2d at 237, 408 N.Y.S.2d 359, 380 N.E.2d 189. He subsequently violated the decree by permitting the policies to lapse. *Id.* at 238, 408 N.Y.S.2d 359, 380 N.E.2d 189. The husband remarried and purchased new policies naming his new wife and daughter as beneficiaries. *Id.* When he died bankrupt, the first wife sued the second and obtained a constructive trust on the insurance proceeds. *Id.* at 243, 408 N.Y.S.2d 359, 380 N.E.2d 189. In a second matrimonial case, *Rogers v. Rogers*, 63 N.Y.2d 582, 483 N.Y.S.2d 976, 473 N.E.2d 226 (1984), the New York Court of Appeals, relying on *Simonds*, again granted a former wife's request for a constructive trust on the insurance proceeds received by a second wife after the husband breached a separation agreement obligating him to maintain life insurance for the benefit of his first wife. *Id.* at 586–88, 483 N.Y.S.2d 976, 473 N.E.2d 226.

However, *Simonds* and *Rogers* differ from our case in important respects. They involved willful breaches of family obligations arising from matrimonial relationships and willful breaches of court-ap-

proved separation agreements and divorce decrees. By contrast, FCFC's failure to meet its obligations under the Agreement essentially resulted from its insolvency. The Trustee held on to the refund because of his understanding of the obligations imposed on him by the Bankruptcy Code; no suggestion has been made of bad faith or malfeasance of any kind on his part.

 Moreover, neither *Simonds* nor *Rogers* permitted a constructive trust between *parties to the contract at issue*. Consequently, neither the "agreement" principle nor its rationale applied in those cases. It is well-established under New York law that "equity will not entertain jurisdiction where there is an adequate remedy at law." *Boyle v. Kelley*, 42 N.Y.2d 88, 91, 396 N.Y.S.2d 834, 365 N.E.2d 866 (1977). With respect to constructive trusts specifically, New York courts have clarified that "[a]s an equitable remedy, a constructive trust should not be imposed unless it is demonstrated that a legal remedy is inadequate." *Bertoni v. Catucci*, 117 A.D.2d 892, 498 N.Y.S.2d 902, 905 (1986); *see also Evans v. Winston & Strawn*, 303 A.D.2d 331, 757 N.Y.S.2d 532, 534 (2003) ("Plaintiffs' claim for a constructive trust was properly dismissed since plaintiffs do not claim that [defendant] is unable to repay plaintiffs' capital contributions, and it does not otherwise appear that the legal remedy of damages will be inadequate."). The connection between this principle and the "agreement" principle announced in *Schloss* is obvious; where a valid agreement controls the rights and obligations of the parties, an adequate remedy at law typically exists.

In *Simonds* and *Rogers*, constructive trusts were required because adequate le-

are not permitted if a written contract between the parties governs the subject matter of their dispute"); *cf. Cherno v. Dutch Am. Mercantile Corp.*, 353 F.2d 147, 154 (2d Cir.

1965) (holding that "breach of a contract concerning payment of a debt furnishes no basis for the finding of a constructive trust").

gal remedies were unavailable. The first wives had no contracts with the second wives and, consequently, no contract claims against them. Thus, the "agreement" principle simply played no part in those cases. *See Simonds,* 45 N.Y.2d at 238, 408 N.Y.S.2d 359, 380 N.E.2d 189. FCIC, on the other hand, has a contractual claim directly against FCFC—arising out of the Agreement—which can be pursued in the bankruptcy proceeding. We concede that FCIC, like many other creditors, will not, in all probability, be made whole in the proceedings; but that does not mean its remedy is legally inadequate, simply that it is imperfect.

### B. The Absence of Fraud or Other Wrongful Conduct

A constructive trust is not an appropriate remedy for an additional reason. While a showing of actual fraud or wrongful conduct is not strictly required for a constructive trust, New York law is clear that a constructive trust is an equitable remedy intended to be "fraud-rectifying" rather than "intent-enforcing." *Bankers Sec. Life Ins. Soc'y,* 49 N.Y.2d at 940, 428 N.Y.S.2d 623, 406 N.E.2d 440; *see also George Basch Co. v. Blue Coral, Inc.,* 968 F.2d 1532, 1538 (2d Cir.1992). For example, in *Binenfeld v. Binenfeld,* 146 A.D.2d 663, 537 N.Y.S.2d 41 (1989), the court affirmed the denial of the appellant's counterclaim for a constructive trust on the house of his deceased mother. The court noted that "[i]n the instant case the appellant does not allege that his deceased mother perpetrated an actual or constructive fraud upon him." *Id.* at 42 (internal quotation marks omitted). Rather, the appellant's "basic position [was] that his mother intended to convey the house to him, but failed to do so." *Id.* After observing that New York "[c]ourts have uniformly held that a constructive trust is a 'fraud-rectifying' remedy rather than an 'intent-

enforcing' one," *id.* (quoting *Bankers Sec. Life Ins. Soc'y,* 49 N.Y.2d at 940, 428 N.Y.S.2d 623, 406 N.E.2d 440), the court concluded: "Although the facts may reveal a case of unrealized expectations, we may not, without more, fashion a constructive trust.... Decedent may well have had a moral obligation to give the property to [the appellant] but such an obligation is not enough to set a court in motion to compel the devolution of property in a certain way." *Id.* at 42–43, 428 N.Y.S.2d 623, 406 N.E.2d 440 (internal quotation marks and citation omitted).

*Plotnikoff v. Finkelstein,* 105 A.D.2d 10, 482 N.Y.S.2d 730 (1984), involved an appeal from the imposition of a constructive trust on a condominium held in the defendant's name. While acknowledging that "unjust enrichment does not require the performance of any wrongful act by the one enriched," the court found that the *Schloss* standard for unjust enrichment had not been met because there was no evidence of fraud or overreaching by the defendant with respect to taking title in her name. *See id.* at 732–33. Given that a "constructive trust is fraud-rectifying rather than intent-enforcing," the court determined that "in [these] circumstances, the invocation of equity cannot be justified." *Id.* at 733 (internal quotation marks and citations omitted); *see also Bazerman v. Edwards,* 295 A.D.2d 115, 742 N.Y.S.2d 822, 822 (2002); *Sperrazza v. Kail,* 267 267 A.D.2d 692, 699 N.Y.S.2d 609, 611 (1999).

The significance of this authority is clear. FCIC does not allege fraud or other misconduct in connection with the Trustee's determination to hold on to the refund. No one disputes that the Trustee's conduct is fully consistent with—and indeed, required by—the obligation imposed by the Bankruptcy Code to marshal and preserve estate assets. *See* 11 U.S.C. § 704; *Cent. States, S.E. & S.W. Areas*

*Pension Fund v. Cent. Transp., Inc.,* 472 U.S. 559, 572, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985) ("One of the fundamental common-law duties of a trustee is to preserve and maintain trust assets ... The trustee is thus expected to use reasonable diligence to discover the location of the trust property and to take control of it without unnecessary delay.") (internal citations and quotation marks omitted); *Matter of Nat'l Hosp. & Institutional Bldrs. Co.,* 658 F.2d 39, 44 (2d Cir.1981) (emphasizing that "the purpose of the bankruptcy laws [is] to allow the trustee without delay to marshal and administer the assets of the debtor"). Nor is there any dispute that FCFC's inability to honor the Agreement resulted not from misconduct, but from the operation of the Code. In essence, FCIC does not seek a constructive trust as a "fraud-rectifying" remedy, but as a means to enforce the intention of the parties as reflected in the Agreement. This position, however, conflicts with the reality that the expectations, at least of unsecured creditors, are nearly always frustrated in Chapter 7 proceedings where contracts are dishonored, investments are lost, and businesses disappear. While FCIC may understandably chafe at being required to accept less than it was otherwise entitled to receive under the Agreement, the short—and conclusive—answer is that this is not injustice, it is bankruptcy.

## C. Special Considerations Within the Bankruptcy Context

■ The tension between constructive trust law and bankruptcy law is another reason to proceed with caution. The chief purposes of the bankruptcy laws are "to secure a prompt and effectual administration and settlement of the estate of all bankrupts within a limited period," *Katchen v. Landy,* 382 U.S. 323, 328–29, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966) (internal quotation marks and citation omitted), "to place the property of the bankrupt, wherever found, under the control of the court, for equal distribution among the creditors," *MacArthur Co. v. Johns–Manville Corp.,* 837 F.2d 89, 91 (2d Cir.1988) (internal quotation marks and citation omitted), and "to protect the creditors from one another," *Young v. Higbee Co.,* 324 U.S. 204, 210, 65 S.Ct. 594, 89 L.Ed. 890 (1945). But by creating a separate allocation mechanism outside the scope of the bankruptcy system, "the constructive trust doctrine can wreak ... havoc with the priority system ordained by the Bankruptcy Code." *In re Haber Oil Co.,* 12 F.3d 426, 436 (5th Cir.1994); *see also In re Omegas Group, Inc.,* 16 F.3d 1443, 1451 (6th Cir.1994) ("A constructive trust is fundamentally at odds with the general goals of the Bankruptcy Code.") (internal quotation marks and citation omitted).

In this Circuit, we have rejected the notion that bankruptcy law trumps state constructive trust law: "[W]hile the outer boundaries of the bankruptcy estate may be uncertain, 'Congress plainly excluded property of others held by the debtor in trust at the time of the filing of the petition.'" *In re Howard's Appliance Corp.,* 874 F.2d at 93 (quoting *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 205 n. 10, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983))

■ While we do not depart from our holding in *Howard's,* we note that our obligation to apply New York constructive trust law does not diminish the need to "act very cautiously" to minimize conflict with the goals of the Bankruptcy Code. *In re N. Am. Coin & Currency, Ltd.,* 767 F.2d 1573, 1575 (9th Cir.1985). In light of the fact that these goals can be compromised by the imposition of a constructive trust, "bankruptcy courts are generally reluctant to impose constructive trusts without a substantial reason to do so." *In re*

*Haber Oil Co.,* 12 F.3d at 436 (internal quotation marks and citations omitted). Bankruptcy courts in this Circuit are no exception. *See, e.g., In re Braniff Int'l Airlines, Inc.,* 164 B.R. 820, 827 (Bankr. E.D.N.Y.1994) (stating that the policy underlying the bankruptcy laws "runs counter to that underlying the imposition of a constructive trust" and declining to impose a constructive trust); *In re Universal Money Order Co.,* 470 F.Supp. 869, 879 (S.D.N.Y.1977) (declining to impose a constructive trust after observing that "[t]he destructive effect of [a constructive trust], within the context of a uniform national bankruptcy law, is apparent"); *In re Commodore Bus. Machs., Inc.,* 180 B.R. 72, 83 (Bankr.S.D.N.Y.1995) ("[C]onstructive trusts are anathema to the equities of bankruptcy since they take from the estate, and thus directly from competing creditors, and not from the offending debtor.") (internal quotation marks and citation omitted); *In re Vichele Tops, Inc.,* 62 B.R. 788, 792 (Bankr.E.D.N.Y.1986) ("[T]his court would be reluctant to recognize the [constructive] trust because such action would work an injustice on all the creditors not a party to this proceeding. The general creditor body should not be prejudiced .... Law suits are proceedings which seek to balance right, duties, equities, and entitlements. While courts, in non-bankruptcy matters, consider primarily the interests of the parties before it, a court of bankruptcy has a broader scope. It must interpret its enabling legislation in the light of its purpose.") (internal quotation marks and citations omitted).

Although we do not disturb the general rule that constructive trusts must be determined under state law, we believe it important to carefully note the difference between constructive trust claims arising in bankruptcy as opposed to those that do not, as the "equities of bankruptcy are not the equities of the common law." *In re*

*Omegas,* 16 F.3d at 1452. In the typical non-bankruptcy case, a constructive trust claim is intended to prevent one who failed to meet an obligation or committed fraud or other misconduct from becoming unjustly enriched. The Chapter 7 context, however, is fundamentally different. The trustee marshals the assets of the estate under judicial supervision, for distribution according to federal law, under circumstances in which unsecured creditors receive fair but not full returns. While FCFC's estate may have been enriched, it was not unjustly enriched:

> A variety of circumstances may be posited in which, through an unfulfilled promise and abuse of a confidential relationship, one party induces another to make a transfer resulting in the first party's enrichment. But the law is adamant. Enrichment alone will not suffice to invoke the remedial powers of a court of equity.

*McGrath v. Hilding,* 41 N.Y.2d 625, 629, 394 N.Y.S.2d 603, 363 N.E.2d 328 (1977). Because the Trustee does not hold property "under such circumstances that in equity and good conscience he ought not to retain it," *Simonds,* 45 N.Y.2d at 242, 408 N.Y.S.2d 359, 380 N.E.2d 189 (internal quotation marks and citations omitted), we affirm the District Court's decision not to impose a constructive trust on any portion of the refund.

## D. *Additional Payments Due Under the Agreement*

The parties also dispute whether Paragraph B of the Agreement entitles FCIC to the entire amount of the refund, or only a portion equal to what FCIC would have received had it filed on its own. Paragraph B of the Agreement provides that FCIC "shall be paid for any foreign credits, investment credits, losses or any loss carry over generated by it to the extent actually used in the consolidated returns." *In re First Cent. Fin. Corp.,* 269 B.R. at

490. FCIC concedes that, due to the operation of the Alternative Minimum Tax, it would have been entitled only to approximately $2 million had it filed separately. FCIC contends, however, that because the additional amount of the actual refund is attributable to loss carry-overs it generated, it is also entitled to that amount. We do not reach this issue since FCIC only appeals the lower courts' decisions not to impose a constructive trust upon any portion of the refund, and, in any event, FCIC's adversary proceeding sought only a declaration of its rights to the refund rather than a determination of how much FCFC owes FCIC under the Agreement.

## CONCLUSION

For the foregoing reasons, the judgment of the District Court is affirmed.