**In re STYLESITE MARKETING, INC. f/k/a Diplomat Direct Marketing Corporation, Debtor.**

**Tekinsight.Com, Inc. f/k/a Tadeo Holdings, Inc., Plaintiff,**

**v.**

**Stylesite Marketing, Inc. f/k/a Diplomat Direct Marketing Corporation and First Source Financial LLP, Defendants.**

**Bankruptcy No. 00 B 10099(SMB). Adversary No. 00/2286A.**

United States Bankruptcy Court, S.D. New York.

Oct. 10, 2000.

Nixon Peabody LLP, for Plaintiff Te-kInsight.Com, New York City, Robert N.H. Christmas, of Counsel.

Angel & Frankel, P.C., for Defendant Stylesite Marketing, Inc., New York City, Neil Siegel, of Counsel.

Neal, Gerber & Eisenberg, for Defendant First Source Financial LLP, Chicago, Illinois, Michael L. Molinaro, John W. Guarisco, of Counsel.

## MEMORANDUM DECISION GRANTING MOTION TO DISMISS COMPLAINT

STUART M. BERNSTEIN, Chief Judge.

Section 510(b) of the Bankruptcy Code subordinates claims arising from the purchase or sale of a security of the debtor.[1] The principal question of bankruptcy law raised in this adversary proceeding is whether the plaintiff, a purchaser of the debtor-defendant's stock, can bypass this restriction by suing to impose a constructive trust on the consideration paid for the securities. Answering the question in the negative, and for the additional reasons discussed below, I grant the defendants' motion to dismiss the plaintiff's complaint.

## BACKGROUND [2]

Stylesite Marketing, Inc., f/k/a Diplomat Direct Marketing, Inc. (the "debtor" or "Stylesite") was primarily engaged in the business of directly marketing women's fashions and other soft good products through the internet, mail and other means. (*See* Complaint ¶ 5.) In or about May 1999, Stylesite and TekInsight.com., Inc. f/k/a Tadeo Holdings, Inc. ("TekInsight") began to discuss an infusion of capital into Stylesite. These discussions culminated in a Securities Purchase Agreement, dated as of June 30, 1999 (the "Agreement").[3] Pursuant to the Agreement, TekInsight agreed to (1) purchase $1,000,000.00 of Stylesite's preferred stock (the "Stylesite Preferred") for cash, and (2) exchange its publicly traded common stock (the "TekInsight Common") valued at $1,000,000.00 for Stylesite's publicly traded common stock (the "Stylesite Common") of like value.[4] (*Id.* ¶¶ 6–9, 17.)

Prior to the transaction, TekInsight conducted due diligence. Stylesite provided it with financial information, including its Annual Report (Form 10–KSB) for the fiscal year ended September 30, 1998, its subsequent SEC filings up to June 1, 1999, a March 1999 "Business Overview and Strategy" and various other financial and business information. (Complaint ¶¶ 11–14.) TekInsight also interviewed Stylesite officers, directors and employees. (*Id.* ¶ 15.) As a result of its due diligence,

1. Section 510(b) provides as follows:
   (b) For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.

2. The facts are based on the allegations in the complaint (the "Complaint"). Since the matter before me involves a motion to dismiss for legal insufficiency, I must assume the truth of those factual allegations, *Harsco Corp. v. Segui,* 91 F.3d 337, 341 (2d Cir.1996), and draw all reasonable inferences in the plaintiff's favor. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94

S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Luedke v. Delta Air Lines, Inc.,* 159 B.R. 385, 389 (S.D.N.Y.1993); *Raine v. Lorimar Prods., Inc.,* 71 B.R. 450, 453 (S.D.N.Y.1987). I may also consider the contents of any documents attached to the complaint or incorporated by reference, matters as to which I can take judicial notice, and documents in the plaintiff's possession or which it knew of or relied on in connection with the complaint. *Brass v. American Film Techs., Inc.,* 987 F.2d 142, 150 (2d Cir.1993); *see Rothman v. Gregor,* 220 F.3d 81, 92 (2d Cir.2000).

3. The Agreement is annexed to the Complaint as Exhibit A.

4. The proposed transactions were exempt from the disclosure requirements of federal securities laws because TekInsight met the requirements of an accredited investor. (Complaint ¶ 10.)

TekInsight concluded that Stylesite was a well-established sales and marketing business with a large customer base and satisfactory customer relations.

The terms of the Agreement did not suggest otherwise. Stylesite represented and warranted that (1) the financial statements were true and complete and fairly represented Stylesite's existing financial condition; (2) there had been no material adverse alteration in Stylesite's financial condition, operations or business subsequent to the issuance of the financial statements; (3) Stylesite was not aware of any facts that had not been disclosed to TekInsight in writing that it reasonably expected could have a material adverse impact on the transaction or Stylesite's ability to perform its obligations under the Purchase Agreement; (4) to the best of Stylesite's knowledge, there was no pending or threatened action, proceeding or investigation which could have a material adverse impact on the transaction; and (5) none of the representations or warranties made by Stylesite was untrue or misleading. (*Id.* ¶ 18.) Based on its due diligence, and in reliance on the truth and accuracy of the financial and business disclosures, TekInsight entered into the Agreement. (*Id.* ¶¶ 16, 19.)

All was not as it seemed, however, as Stylesite's disclosures were both inaccurate and incomplete. Stylesite faced substantial problems with its customers concerning merchandise returns. Specifically, and "[u]pon information and belief, ... Stylesite was unable or unwilling to perform promises and warranties made to hundreds, if not thousands, of its customers that it would accept merchandise returns, refund the purchase price and provide merchandise credits to customers for returned goods...." (*Id.* ¶ 20.)[5] Stylesite did not disclose the magnitude and consequences of the merchandise credit

and return problems to TekInsight prior to execution of the Agreement, (*id.* ¶ 21), and affirmatively implied their non-existence in the Agreement. (*Id.* ¶ 23.) Had TekInsight known of the merchandise credit and return problems, it would not have entered into the Agreement. (*Id.* ¶ 22.)

As a consequence, Stylesite obtained the TekInsight Common and the monies paid for the Stylesite Preferred by "trick and deceit." (*Id.* ¶ 24.) Further, Stylesite pledged the TekInsight Common to First Source Financial LLP ("First Source" and together with Stylesite, the "defendants") as additional collateral for existing indebtedness without TekInsight's knowledge or permission, and First Source has refused to return the stock to TekInsight. (*Id.* ¶¶ 25–26.)

The Complaint contains two claims for relief. Count One seeks to impose a constructive trust on the TekInsight Common and a direction compelling First Source to deliver the stock to TekInsight free and clear of all claims, liens and encumbrances. (*Id.* ¶ 27–28.) Count Two seeks to impose a constructive trust on the funds used to purchase the Stylesite Preferred. (*Id.* ¶¶ 29–30.)

## DISCUSSION

### A. Quasi–Contractual Remedies

The defendants contend, in the first instance, that the Agreement bars the imposition of a constructive trust. Specifically, quasi-contractual claims such as unjust enrichment are not permitted if a written contract between the parties governs the subject matter of their dispute. *Briggs v. Goodyear Tire & Rubber Co.,* 79 F.Supp.2d 228 (W.D.N.Y.1999); *Gidatex S.r.L. v. Campaniello Imports, Ltd.,* 49 F.Supp.2d 298, 301 n. 4 (S.D.N.Y.1999); *Nelson v. Stanley Blacker, Inc.,* 713

---

**5.** According to the Complaint, New Jersey commenced a lawsuit against Stylesite for violation of its Consumer Fraud Act based upon Stylesite's failure to comply with merchandise credit and return requirements. (Complaint ¶ 20.) This occurred more than five months after the parties entered into the Agreement.

F.Supp. 107, 111 (S.D.N.Y.1989); *Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.,* 70 N.Y.2d 382, 521 N.Y.S.2d 653, 516 N.E.2d 190, 193 (1987). The prohibition assumes the existence of a valid contract, and hence, does not apply if the contract is invalid. Thus, if the plaintiff invalidates the contract, he may then recover in quasi-contract based on unjust enrichment. *Bazzano v. L'Oreal, S.A.,* No. 93 Civ. 7121, 1996 WL 254873, at *3 (S.D.N.Y. May 14, 1996); *Chrysler Capital Corp. v. Century Power Corp.,* 778 F.Supp. 1260, 1272 (S.D.N.Y.1991); *Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.,* 521 N.Y.S.2d 653, 516 N.E.2d at 193; *see* JOHN D. CALAMARI & JOSEPH M. PERILLO, LAW OF CONTRACTS § 1–12, at 20 (3rd ed.1987).

Here, TekInsight is not seeking to avoid or disaffirm the Agreement, but rather, to ignore it. As discussed in the next section, TekInsight flirts with the argument that it was fraudulently induced to sign the Agreement, a ground for disaffirmance. Yet for tactical reasons, it never quite makes it. But if the contract is valid, TekInsight's remedies are limited by the aforementioned rule, and it cannot recover in quasi-contract. *See Chrysler Capital Corp. v. Century Power Corp.,* 778 F.Supp. at 1272. Since TekInsight cannot eat its cake and have it too, the refusal to disaffirm the Agreement leaves a valid contract that bars the imposition of a constructive trust.

## B. The Sufficiency of the Constructive Trust Claim

Even if the quasi-contractual remedy were not barred, the Complaint still fails to allege the right to a constructive trust. A constructive trust is an equitable remedy designed to prevent unjust enrichment, and restore legal title to one who, in equity, owns the *res. Counihan v. Allstate Ins. Co.,* 194 F.3d 357, 360 (2d Cir.1999); *Simonds v. Simonds,* 45 N.Y.2d 233, 408 N.Y.S.2d 359, 380 N.E.2d 189, 193 (1978); *Sharp v. Kosmalski,* 40 N.Y.2d 119, 386 N.Y.S.2d 72, 351 N.E.2d 721, 723 (1976); *Beatty v. Guggenheim Exploration Co.,* 225 N.Y. 380, 122 N.E. 378, 380 (1919)(Cardozo, J.). The right to impose a constructive trust is determined by state law. *Sanyo Elec., Inc. v. Howard's Appliance Corp. (In re Howard's Appliance Corp.),* 874 F.2d 88, 93–94 (2d Cir.1989). New York law [6] generally requires proof of (1) a confidential or fiduciary relationship, (2) a promise, (3) a transfer in reliance on the promise, and (4) unjust enrichment. *Koreag Controle et Revision, S.A. v. Refco F/X Assocs., Inc. (In re Koreag, Controle et Revision S.A.),* 961 F.2d 341, 342 (2d Cir.1992), *cert. denied,* 506 U.S. 865, 113 S.Ct. 188, 121 L.Ed.2d 132 (1992); *Sharp v. Kosmalski,* 386 N.Y.S.2d 72, 351 N.E.2d at 723.

Notwithstanding the stated requirements, the remedy is a flexible one, and the facts need not satisfy every element in all cases. *Counihan v. Allstate Ins. Co.,* 194 F.3d at 362; *Palazzo v. Palazzo,* 121 A.D.2d 261, 503 N.Y.S.2d 381, 383–84 (N.Y.App.Div.1986); *see In re Koreag, Controle et Revision S.A.,* 961 F.2d at 352 (the four factors provide important guideposts, but the constructive trust doctrine is equitable in nature and should not be rigidly limited). For example, a court may impose a constructive trust in the absence of a fiduciary relationship, *In re Koreag, Controle et Revision S.A.,* 961 F.2d at 354; RESTATEMENT OF RESTITUTION § 160 cmt. a (1937), or wrongful conduct by the defendant. *Simonds v. Simonds,* 408 N.Y.S.2d 359, 380 N.E.2d at 194; *accord In re Koreag, Controle et Revision S.A.,* 961 F.2d at 354. Even innocent parties may be unjustly enriched, and what is required is that the defendant hold property "under such circumstances that in equity and good con-

---

**6.** The Agreement (§ XI) contains a provision stating that New York law governs its interpretation. Further, the parties rely on New York law, and assume that it governs their dispute. Accordingly, I will likewise assume that New York law controls.

science he ought not to retain it." *Miller v. Schloss*, 218 N.Y. 400, 113 N.E. 337, 339 (1916); *accord In re Koreag, Controle et Revision S.A.*, 961 F.2d at 354; *Simonds v. Simonds*, 408 N.Y.S.2d 359, 380 N.E.2d at 194; *see Counihan v. Allstate Ins. Co.*, 194 F.3d at 362.

TekInsight contends that it was induced to enter into the Agreement through "trick and deceit." (Complaint ¶ 24.) This implies that it was fraudulently induced to enter into the Agreement, but as noted, TekInsight does not allege a claim for rescission. Furthermore, the Complaint does not allege a legally sufficient claim for either fraud or fraudulent inducement, both of which require (1) a misrepresentation, concealment or nondisclosure of a material fact, (2) knowledge of falsity, or *scienter*, (3) intent to deceive, (4) justifiable reliance, and (5) injury. *Channel Master Corp. v. Aluminum Ltd. Sales, Inc.*, 4 N.Y.2d 403, 176 N.Y.S.2d 259, 151 N.E.2d 833, 835 (1958); *see New York University v. Continental Ins. Co.*, 87 N.Y.2d 308, 639 N.Y.S.2d 283, 662 N.E.2d 763, 769 (1995); *Channel Master Corp. v. Aluminum Ltd. Sales, Inc.*, 176 N.Y.S.2d 259, 151 N.E.2d at 835.

The Complaint suffers from two obvious shortcomings in this regard. First, it does not allege *scienter*. It does not state that Stylesite knew that its statements were false or incomplete when made, nor does it allege facts from which such knowledge may be inferred.[7] Second, the Complaint alleges the specific fraudulent misrepresentations and omissions "upon information and belief." (Complaint ¶ 20.) Under Fed.R.Civ.P. 9(b), however, the pleader cannot allege fraud on information and belief unless the facts are "peculiarly within the opposing party's knowledge." *Schlick v. Penn–Dixie Cement Corp.*, 507 F.2d 374, 379 (2d Cir.1974), *cert. denied*, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975); *accord Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d at 664. Even in those cases, the pleader must still allege facts upon which the belief is founded. *Id.; Schlick v. Penn–Dixie Cement Corp.*, 507 F.2d at 379; *Segal v. Gordon*, 467 F.2d at 608. Here, the Complaint also fails to allege facts supporting TekInsight's "information and belief."

Having failed to allege a fraudulent inducement claim, TekInsight does not spell out inequitable conduct that would support the imposition of a constructive trust. Although wrongful conduct is not always necessary, the cases cited by TekInsight involve wrongful or other inequitable conduct missing from its pleading. *See, e.g., In re Koreag, Controle et Revision S.A.*, 961 F.2d at 354–55 (stating, in *dicta*, that a constructive trust would be appropriate where a foreign liquidator received the benefits of a currency swap transaction but did not perform the debtor's reciprocal obligations); *In re Howard's Appliance Corp.*, 874 F.2d 88, 94–95 (imposing constructive trust where debtor prevented secured creditor from perfecting security interest by concealing the fact that the collateral had been moved to another jurisdiction in violation of the parties' agreement); *Simonds v. Simonds*, 408 N.Y.S.2d 359, 380 N.E.2d at 192 (imposing constructive trust on insurance proceeds where deceased husband breached contractual obligation to maintain life insurance policies for the benefit of his first wife); *Latham v. Father Divine*, 299 N.Y. 22, 85 N.E.2d

---

7. Although *scienter* may be pleaded generally, the pleader must "allege facts that give rise to a strong inference of fraudulent intent." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir.1994); *accord Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 663 (2d Cir.1997); *Chill v. General Elec. Co.*, 101 F.3d 263, 267 (2d Cir.1996). A strong inference of fraudulent intent may be established in one of two ways: "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d at 1128; *accord Chill v. General Elec. Co.*, 101 F.3d at 267.

168, 169 (1949) (complaint alleging that distributees under will murdered deceased to prevent execution of new will stated claim for constructive trust); *Palazzo v. Palazzo*, 503 N.Y.S.2d at 383–84 (imposing constructive trust on property purchased by husband in his own name with funds from husband's and wife's joint account).[8]

Second, TekInsight fails to allege unjust enrichment. Stylesite acquired the TekInsight stock and cash pursuant to a valid contractual transaction. Ordinarily, one who receives what he is entitled to under a contract may be enriched, but he is not *unjustly* enriched. 1 DAN B. DOBBS, THE LAW OF REMEDIES: DAMAGES–EQUITY–RESTITUTION § 4.1(2), at 558 (2nd ed.1993)("DOBBS"). In addition, although the Complaint indicates that Stylesite had customer return problems, TekInsight does not allege that the value of the stock it received was less than bargained for under the Agreement. Lastly, a plaintiff seeking restitution must restore the benefits received from the defendant. *See Kamerman v. Curtis*, 285 N.Y. 221, 33 N.E.2d 530, 532–33 (1941); *Ettlinger v. National Surety Co.*, 221 N.Y. 467, 117 N.E. 945, 946 (1917). TekInsight has not done so or offered to do so, and would itself be unjustly enriched if it were permitted to recover its transfers and keep the Stylesite stock.[9]

## C. Subordination Under 11 U.S.C. § 510(b)

Even if the Complaint asserts a legally sufficient constructive trust claim, § 510(b) bars the relief sought.[10] By its express terms, § 510(b) subordinates rescission claims arising from the purchase of securities. Subordination reflects the different risks allocated between creditors and shareholders under the absolute priority rule. *In re Granite Partners, L.P.*, 208 B.R. 332, 337 (Bankr.S.D.N.Y.1997); John J. Slain & Homer Kripke, *The Interface Between Securities Regulation and Bankruptcy—Allocating the Risk of Illegal Securities Issuance Between Securityholders and the Issuer's Creditors*, 48 N.Y.U.L.Rev. 261, 286–87 (1973) ("Slain & Kripke"). While both the shareholder and the creditor bear the risk of the corporation's insolvency, the shareholder alone bears the risk that his investment was induced by fraud or other illegality. *Jezarian v. Raichle (In re Stirling Homex Corp.)*, 579 F.2d 206, 213–14 (2d Cir.1978), *cert. denied*, 439 U.S. 1074, 99 S.Ct. 847, 59 L.Ed.2d 40 (1979) (decided under the former Bankruptcy Act); *In re Granite Partners, L.P.*, 208 B.R. at 336–38; Slain & Kripke at 288. Section 510(b) accomplishes this end by requiring the creditors to be paid in full before defrauded former and present shareholders may receive a distribution. *See In re Granite Partners, L.P.*, 208 B.R. at 339; H. Rep. 95–595, at 195–96 (1977); *cf. In re Stirling Homex Corp.*, 579 F.2d at 214–15 (decided under the former Bankruptcy Act).

To avoid the result mandated by § 510(b), TekInsight consciously sidesteps rescission, but gets tripped up in the process. TekInsight must unwind the transaction encompassed in the Agreement to recover its stock and cash. In this regard, its plea for restitution is merely the remedial flip side of its rescission claim; rescission will unwind or avoid the transaction, and restitution will put the parties back in

---

8. TekInsight also cites *In re Treco*, 229 B.R. 280 (Bankr.S.D.N.Y.), *aff'd*, 239 B.R. 36 (S.D.N.Y.1999). In that case, the court declined to impose a constructive trust.

9. TekInsight might be relieved of its duty to restore if the Stylesite stock were valueless. *See* RESTATEMENT OF RESTITUTION § 65(d) (1937). The Complaint does not allege that the stock is worthless, and although Stylesite is a debtor, I cannot take judicial notice of its value.

10. The plaintiffs raised this ground in their moving memorandum, *see Memorandum of Law In Support of Joint Motion to Dismiss Complaint to Establish Constructive Trust*, undated (ECF Doc. No. 3, filed June 6, 2000), at 7–8, but TekInsight did not respond to the argument in its opposition memorandum.

their original positions. *See* 1 DOBBS § 4.3(6), at 614. In fact, as we have seen, TekInsight must invalidate the Agreement to avoid the bar to constructive trust relief raised by *Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987), and the other cases cited in the first section of the discussion.

In any event, whatever TekInsight chooses to call it, its rights depend on its purchase of the Stylesite stock, and, therefore, arise from that purchase. Accordingly, § 510(b) will subordinate TekInsight's right to relief provided that right is a "claim" within the meaning of the Code. Under § 101(5)(B), a "claim" includes a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment." A constructive trust is an equitable remedy, and in *CRS Steam, Inc. v. Engineering Resources, Inc. (In re CRS Steam, Inc.)*, 225 B.R. 833 (Bankr. D.Mass.1998), Judge Queenan parsed § 101(5)(B), and held that a constructive trust was a "claim" under the definition in the Code. *Id.* at 840–42; *accord* V AUSTIN WAKEMAN SCOTT & WILLIAM FRANKLIN FRATCHER, THE LAW OF TRUSTS § 481.2, at 401 (4th ed.1989); James E. Spiotto, *The Effectiveness of Subordination: Possible Causes of Action and Claims of Debtholders Upon Default*, 409 PLI/Real Estate & Practice Course Handbook Series 701, 718 (1995); *cf. XL Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.)*, 16 F.3d 1443, 1449 (6th Cir.1994)(concluding that a constructive trust was a "claim" without referring to the statutory definition).

■ I agree. An equitable right will be a "claim" if payment of a monetary remedy is an alternative. *See Air Line Pilots Ass'n v. Continental Airlines (In re Continental Airlines)*, 125 F.3d 120, 133 (3d Cir.1997), *cert. denied*, 522 U.S. 1114, 118 S.Ct. 1049, 140 L.Ed.2d 113 (1998); *In re Udell*, 18 F.3d 403, 408 (7th Cir.1994); *United States v. LTV Corp. (In re Chateauguay Corp.)*, 944 F.2d 997, 1008 (2d

Cir.1991); *Creator's Way Associated Labels, Inc. v. Mitchell (In re Mitchell)*, 249 B.R. 55, 59 (Bankr.S.D.N.Y.2000). Whether the remedies are alternative depends on state law. *In re Udell*, 18 F.3d at 408; *In re Mitchell*, 249 B.R. at 59.

■ Under New York law, a party fraudulently induced to enter into a contract has two general avenues; rescind the contract, return any consideration and seek restitution, or affirm the contract and seek damages. *Bazzano v. L'Oreal, S.A.*, 1996 WL 254873, at *3; *Chrysler Capital Corp. v. Century Power Corp.*, 778 F.Supp. at 1272; *Ettlinger v. National Surety Co.*, 117 N.E. at 946; *see ESI, Inc. v. Coastal Power Prod. Co.*, 995 F.Supp. 419, 436 (S.D.N.Y.1998). Although the amount that the plaintiff may ultimately recover can differ depending on the particular theory, *see Bazzano v. L'Oreal, S.A.*, 1996 WL 254873, at *3, the constructive trust and damage claim, albeit inconsistent, are nevertheless alternative remedies, and either one fully satisfies the plaintiff's injury.

While it is sufficient that the words of the Code render the constructive trust a "claim," the result also comports with the policy underlying § 510(b). In other words, even if TekInsight is entitled to a constructive trust, its remedy should still be subordinated to the payment of all other claims. *Cf. Kelce v. U.S. Fin. Inc. (In re U.S. Fin. Inc.)*, 648 F.2d 515, 519 (9th Cir.1980)(permitting shareholder to rescind the transaction and reclaim his consideration would permit him "to transform his claim as a defrauded shareholder into a secured claim, in derogation of the rights of the senior classes and in violation of the absolute priority rule")(decided under the former Bankruptcy Act), *cert. denied*, 451 U.S. 970, 101 S.Ct. 2046, 68 L.Ed.2d 348 (1981); 1 DOBBS § 5.18(3), at 934 (a court may refuse to grant a constructive trust where it operates to impair the interests of the defendant's other creditors). Section 510 represents a Congressional decision to pay creditors before defrauded shareholders. In demanding the immediate and

specific restitution of its cash and stock, TekInsight is attempting to obtain a priority for a claim that is not even entitled to parity.

For all of the foregoing reasons, the motion to dismiss the Complaint is granted. Settle order on notice.