**Kenneth C. KINNEY, Appellant,**

v.

**Kathleen M. GALLAGHER, Appellee.**

**No. 14–CV–6233 EAW.**

United States District Court,
W.D. New York.

Signed Jan. 23, 2015.

Paul M. Aloi, Rochester, NY, for Appellant.

David H. Ealy, Trevett, Cristo, Salzer & Andolina P.C., Rochester, NY, for Appellee.

## DECISION AND ORDER

ELIZABETH A. WOLFORD, District Judge.

### I. INTRODUCTION

This is an appeal from an order of the United States Bankruptcy Court for the Western District of New York, entered on March 21, 2014. (Dkt. 1–1). In that order, Bankruptcy Judge Paul R. Warren granted Appellee Kathleen M. Gallagher's ("Gallagher") motion for contempt to the extent that he found the state court claim of Appellant Kenneth C. Kinney ("Kinney") constituted a claim as defined in 11 U.S.C. § 101(5) that was discharged as a matter of law in Gallagher's bankruptcy case. (Dkt. 6 at 27). Judge Warren directed Kinney to execute a Stipulation of Discontinuance of his pending state court action and ordered Gallagher to turn over to Kinney the hot tub that was partly the subject of the state court action. (Dkt. 1–1 at 2).

On appeal, Kinney challenges the contempt order, arguing that the Bankruptcy Court erred in finding that Kinney's claim of an equitable interest in real estate titled to Gallagher was a claim pursuant to the Bankruptcy Code, and that the Bankruptcy Court did not have the authority to enjoin Kinney's equitable claim asserted in state court. (Dkt. 1–3). Gallagher cross-appeals from the part of the Order denying her motion for an award of actual and punitive damages for willful violation of the discharge. (Dkt. 1–2). For the reasons that follow, the March 21, 2014 order of the Bankruptcy Court is affirmed in all respects.

### II. BACKGROUND

Kinney and Gallagher were at one time involved in a personal relationship and agreed to purchase a house at 654 Lake Road, Webster, New York 14580. (Dkt. 8

at 5). Kinney's name was not placed on the deed because Kinney had tax arrears owed to the Internal Revenue Service and was participating in a tax repayment agreement. (*Id.*). The parties lived together on the premises until an argument on or about January 11, 2005, when Kinney moved from the premises. (*Id.;* Dkt. 6 at 35). Gallagher has continued to reside at the Lake Road property. (Dkt. 11 at 16).

On August 24, 2005, Kinney commenced an action in New York State Supreme Court against Gallagher seeking conveyance of an interest in the Lake Road property. (Dkt. 1–6 at 8–13; Dkt. 11 at 9). Kinney alleged that he and Gallagher orally agreed that he would be put on the deed and would be entitled to receive proceeds from the sale of the property because he had allegedly contributed funds ($10,000) for the down payment on the property and had also made improvements to the property. (Dkt. 1–6 at 8–13; Dkt. 11 at 9).

On October 29, 2007, Gallagher filed a voluntary Chapter 7 petition with the Bankruptcy Court. (Dkt. 1–5). In her schedule of debts, Gallagher listed Kinney as the holder of an unsecured claim. (*Id.* at 20). Gallagher also indicated that there was an action by Kinney pending against her in the New York State Supreme Court for Monroe County. (*Id.* at 29). On January 23, 2009, counsel for Gallagher sent a letter to counsel for Kinney advising of the Chapter 7 filing and the effect of the automatic stay. (Dkt. 1–6 at 15). Gallagher's counsel directed Kinney's counsel to terminate the prosecution of the state court action in accordance with the automatic stay. (*Id.*).

During the Chapter 7 proceedings, the Trustee recovered assets for distribution to creditors, but Kinney did not file a claim or receive distribution of funds from the estate. (Dkt. 6 at 29).

On January 29, 2008, Gallagher was granted a discharge of her debts under Chapter 7. (*Id.*). Gallagher's bankruptcy case was closed on December 13, 2011, after the Trustee completed the administration of estate assets. (*Id.* at 29–30).

Kinney continued to pursue his state court action by filing a Note of Issue and Statement of Readiness on August 19, 2013. (*Id.* at 30).

On October 3, 2013, Gallagher filed a motion for contempt against Kinney before the Bankruptcy Court, arguing that continuation of the state court action was a violation of her Chapter 7 discharge. (Dkt. 1–7 at 2). Gallagher asked the Bankruptcy Court to find Kinney in contempt for violation of the discharge, and requested that the state court action be enjoined. (*Id.*).

In opposition, Kinney argued that he was not a creditor, and that his state court action was one of constructive trust for the return of personal property and for a determination of interest in property. (Dkt. 1–8 at 1–2). Kinney argued that he was not requesting a money judgment, and that therefore his continuation of the state court claim was not a violation of the discharge and stay in bankruptcy. (*Id.* at 2).

On October 17, 2013, the Bankruptcy Court heard arguments on Gallagher's contempt motion and adjourned the hearing to permit the parties to further brief the legal issues. (Dkt. 4). The parties returned to Bankruptcy Court on November 21, 2013, and the hearing was further adjourned so the parties could file response and reply briefs. (Dkt. 5). On January 23, 2014, the Bankruptcy Court held a final hearing on the motion, and the Bankruptcy Court's decision was read into the record. (Dkt. 6 at 26–50).

The Bankruptcy Court issued an order on March 21, 2014, granting Gallagher's

motion for contempt to the extent that it found that Kinney's state court action was a claim as defined in 11 U.S.C. § 101(5), and was thus subject to the discharge injunction provided for under 11 U.S.C. § 524(a)(2). (*Id.* at 27). Kinney's state court claim was enjoined in accordance with the bankruptcy stay. (Dkt. 1–1). The Bankruptcy Court directed Gallagher to turn over Kinney's hot tub. (*Id.*).

Kinney filed a notice of appeal with the Bankruptcy Court on March 30, 2014, and on May 7, 2014, his appeal of the contempt order was filed with this Court. (Dkt. 1). Kinney seeks to be placed on the title of the Lake Road property, and argues that he can pursue his state court action seeking this relief even after Gallagher's discharge in Bankruptcy. (Dkt. 8 at 6). Gallagher cross-appeals from the part of the Bankruptcy Court's order denying her motion for contempt sanctions. (Dkt. 1–2).

## III. DISCUSSION

### A. Standard of Review

■ "District courts are vested with appellate jurisdiction over bankruptcy court rulings pursuant to 28 U.S.C. § 158(a)." *In re Plumeri,* 434 B.R. 315, 327 (S.D.N.Y. 2010). On appeal, the Court " 'may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings.' " *Id.* (quoting Fed. R. Bankr.P. 8013). "Generally in bankruptcy appeals, the district court reviews the bankruptcy court's factual findings for clear error and its conclusions of law de novo." *In re Charter Commc'ns, Inc.,* 691 F.3d 476, 482–83 (2d Cir.2012). As a result, the Court reviews the Bankruptcy Court's order enjoining Kinney's state court action *de novo.*

■ "The decision to impose sanctions is a matter committed to the court's discretion (unless mandated by statute or rule) and is therefore reviewed for abuse of discretion." *Grand St. Realty, LLC v. McCord,* No. 04–CV–4738(CBA), 2005 WL 2436214, at *8 (E.D.N.Y. Sept. 30, 2005). "A bankruptcy court abuses its discretion when it bases its decision on an erroneous view of the law or clearly erroneous factual findings. A bankruptcy court also abuses its discretion if it commits a clear error of judgment." *Sears, Roebuck & Co. v. Spivey,* 265 B.R. 357, 364 (E.D.N.Y.2001) (citations omitted). Accordingly, the Court reviews the Bankruptcy Court's order denying Gallagher's request for contempt sanctions for an abuse of discretion.

### B. Kinney's Appeal

Kinney argues that he held equitable interest in the Lake Road property at the time of the bankruptcy proceeding, that this equitable interest was not a part of the estate for purposes of the bankruptcy proceeding, and that he may now pursue his equitable interest in the property because it was not discharged through Gallagher's Chapter 7 proceeding. (Dkt. 8 at 8–9). Kinney contends that his $10,000 down payment for the property and subsequent home improvements establish that he was intended to be a co-owner of the property and that he held equitable interest in the property. (*Id.* at 5). Gallagher disputes Kinney's claims, arguing that Kinney has failed to establish that he was entitled to a constructive trust at the time of the Bankruptcy proceeding, and in any event he has violated the discharge injunction by continuing to pursue essentially monetary relief. (Dkt. 11 at 9–11).

#### 1. Equitable Interest

"Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest ... becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such

property, but not to the extent of any equitable interest in such property that the debtor does not hold." 11 U.S.C. § 541(d); *see also In re Fagan*, 166 B.R. 531, 535 (Bankr.E.D.N.Y.1993).

█ "Where the debtor's conduct gives rise to the imposition of a constructive trust, so that the debtor holds only bare legal title to the property, subject to a duty to reconvey it to the rightful owner, the estate will generally hold the property subject to the same restrictions." *In re Howard's Appliance Corp.*, 874 F.2d 88, 93 (2d Cir.1989) (quotations omitted). "Indeed, the Supreme Court has declared that, while the outer boundaries of the bankruptcy estate may be uncertain, Congress plainly excluded property of others held by the debtor in trust at the time of the filing of the petition.'" *Id.* (quotation omitted). As a result, in order for Kinney to be able to pursue his claims of an equitable interest in state court, he must establish that Gallagher held the property in constructive trust for Kinney at the time she filed her bankruptcy proceeding.

### a. Elements of Constructive Trust

█ "The existence and nature of a debtor's interest, and correspondingly the estate's interest, in property is determined by state law. One must look to state law, therefore, to determine whether to impose a constructive trust on property within the debtor's possession." *Id.* (citations omitted). Here, there is no dispute that the Lake Road property in question is located in Webster, New York.

█ "New York law generally requires four elements for a constructive trust: '(1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer . . . made in reliance on that promise; and (4) unjust enrichment.'" *In re First Cent. Fin. Corp.*, 377 F.3d 209, 212 (2d Cir.2004) (quoting *United States v.*

*Coluccio*, 51 F.3d 337, 340 (2d Cir.1995)). "The constructive trust doctrine is equitable in nature and should not be 'rigidly limited' by the four elements." *Speedfit LLC v. Woodway USA, Inc.*, —— F.Supp.3d ——, ——, No. 13–CV–1276(KAM)(AKT), 2014 WL 5093161, at *13 (E.D.N.Y. Oct. 10, 2014) (quoting *In re Koreag, Controle et Revision S.A.*, 961 F.2d 341, 352 (2d Cir.1992)). "What is necessary is that the court identify a party who is holding property 'under such circumstances that in equity and good conscience he ought not to retain it.'" *Counihan v. Allstate Ins. Co.*, 194 F.3d 357, 361 (2d Cir.1999) (quoting *Miller v. Schloss*, 218 N.Y. 400, 407, 113 N.E. 337 (1916)).

█ "In considering whether to impose a constructive trust in a bankruptcy case, the Second Circuit has cautioned that while bankruptcy law does not 'trump' state constructive trust law, bankruptcy courts should 'act very cautiously' in deciding whether to impose a constructive trust on property that otherwise would be property of the estate." *In re Balgobin*, 490 B.R. 13, 20 (Bankr.E.D.N.Y.2013) (quoting *In re First Cent. Fin. Corp.*, 377 F.3d at 217). "The effect of a constructive trust in bankruptcy is profound. While the bankrupt estate is defined very broadly under § 541(a)(1) of the Bankruptcy Code to include all legal or equitable interests of the debtor, any property that the debtor holds in constructive trust for another is excluded from the estate pursuant to § 541(d). . . ." *In re Flanagan*, 503 F.3d 171, 180 (2d Cir.2007).

### Fiduciary or Confidential Relationship

█ "Although no marital or other family relationship is present in this case, such is not essential for the existence of a confidential relationship." *Sharp v. Kosmalski*, 40 N.Y.2d 119, 121, 386 N.Y.S.2d

72, 351 N.E.2d 721 (1976) (citations omitted); *see also Dee v. Rakower,* 112 A.D.3d 204, 212, 976 N.Y.S.2d 470 (2d Dep't 2013) (finding confidential relationship where unmarried couple resided together for 17 years). It appears that Kinney and Gallagher were in a confidential relationship because they were living together for a period of time. (Dkt. 8 at 6; Dkt. 6 at 35). Yet, even if their relationship did not qualify as a confidential relationship, this would not itself be fatal to a constructive trust claim. *See State Farm Mut. Auto. Ins. Co. v. Cohan,* No. 12–CV–1956 JS GRB, 2013 WL 4500730, at *4 (E.D.N.Y. Aug. 20, 2013) (" 'the absence of any one factor will not itself defeat the imposition of a constructive trust when otherwise required by equity' ") (quoting *In re Koreag,* 961 F.2d at 353).

### Promise, Express or Implied

Kinney claims that he and Gallagher had an oral agreement that he would be placed on the title to the property after he completed his tax repayment agreement. (Dkt. 8 at 5). There are insufficient facts to determine if such an oral agreement was actually made, but if it had been made, this agreement would be a sufficient promise to support a constructive trust. *See Tyree v. Henn,* 109 A.D.3d 906, 908, 971 N.Y.S.2d 319 (2d Dep't 2013) (imposing a constructive trust where there was an oral agreement that defendants would convey property to plaintiff at a later date); *see also Canzona v. Atanasio,* 118 A.D.3d 837, 840, 989 N.Y.S.2d 44 (2d Dep't 2014) (finding oral agreement to reimburse plaintiff for payments made toward property and boat may be sufficient to sustain a constructive trust).

### Reliance on Promise

"[C]ourts have held that a constructive trust may be imposed where 'funds, time and effort are contributed in reliance on a promise to share in the result.' " *Melnick v. Press,* 809 F.Supp.2d 43, 69 (E.D.N.Y. 2011) (quoting *Lester v. Zimmer,* 147 A.D.2d 340, 342, 542 N.Y.S.2d 855 (3d Dep't 1989)); *see also Hairman v. Jhawarer,* 122 A.D.3d 570, 570, 997 N.Y.S.2d 84 (2d Dep't 2014) ("The element of a 'transfer in reliance' is not limited to instances in which the plaintiff has actually transferred title to the property to the defendant, but may also include instances where the plaintiff has provided substantial funds for the maintenance and improvement of it."); *Henning v. Henning,* 103 A.D.3d 778, 780, 962 N.Y.S.2d 189 (2d Dep't 2013) ("Because the [plaintiff] had no actual prior interest in the property, she was required to show that an equitable interest developed through the expenditure of time, money, and labor.").

Here, Kinney allegedly contributed $10,000 to the down payment on the Lake Road property and then performed various service work on the property, demonstrating a reliance on a promise to share in the result of his efforts. *See Tyree,* 109 A.D.3d at 908, 971 N.Y.S.2d 319 (finding reliance on promise and imposing constructive trust where plaintiff established that he gave $58,500 toward purchase of the subject realty); *McNeil v. Mohammed,* 32 A.D.3d 829, 830, 821 N.Y.S.2d 225 (2d Dep't 2006) ("in reliance on that promise, the plaintiff made most of the down payment on the subject realty and thereafter paid the mortgage thereon and for repairs thereto"); *Ruiz v. Meloney,* 26 A.D.3d 485, 486, 810 N.Y.S.2d 216 (2d Dep't 2006) ("The plaintiff's allegations that she contributed time, money and energy into finding the home, purchasing and then maintaining it are sufficient to satisfy the 'transfer in reliance' element.") (citations omitted).

### Unjust Enrichment

"The fourth factor [of unjust enrichment] is most important, since the pur-

pose of the constructive trust is the prevention of unjust enrichment." *Usov v. Lazar*, No. 13 Civ. 818(RWS), 2014 WL 4354691, at *11 (S.D.N.Y. Sept. 2, 2014). Assuming, *arguendo*, that the facts supported that Kinney and Gallagher's relationship was a confidential one, that there was a promise that Kinney's name would eventually go on the title to the Lake Road property, and that Gallagher was given full title and received the benefits of Kinney's labor with regard to the property in reliance on that promise, there are not enough facts in the record for the Court to make a conclusive determination as to whether Gallagher was unjustly enriched by holding title to the property.

Kinney argues that he is equitably entitled to 50% of the property because of his contributions to the property. (Dkt. 8 at 7). Kinney claims that Gallagher's retention of the property constitutes unjust enrichment, insofar as he believes that he is entitled to 50% of the value of the property Gallagher currently retains. (*Id.*).

Although Kinney claims that he made improvements to the property (and has provided an itemized list of costs related to those improvements), Kinney has not demonstrated that he is entitled to any ownership in the property. Kinney lived on the property from 1998 through 2005. By contrast, Gallagher has had the full title to the property and has lived on the premises from 1998 through the present and has solely paid the mortgage on the property since 2005. (Dkt. 11 at 16).

Further, Kinney arguably received the benefit of his contributions to the property during the time that he resided on the property such that Gallagher would not be unjustly enriched by his contributions. *See Henning*, 103 A.D.3d at 780–81, 962 N.Y.S.2d 189 (finding no unjust enrichment where "improvements undertaken by the [plaintiff] were principally made for the benefit of her, her husband, and their children," and the title owners to the property did not seek rent during the time the plaintiff lived on the property); *In re Akanmu*, 502 B.R. 124, 138–39 (Bankr. E.D.N.Y.2013) (because debtors' children received education, there was no unjust enrichment of educational facility through retention of tuition payments). *Cf. Tyree*, 109 A.D.3d at 908, 971 N.Y.S.2d 319 (finding unjust enrichment and imposing constructive trust where plaintiff provided money toward down payment on property but never moved in and was not reimbursed); *Nuss v. Sabad*, 976 F.Supp.2d 231, 253 (N.D.N.Y.2013) (finding unjust enrichment where defendants received 50% ownership stake in subject realty despite contributing only 17.5% of its purchase price and subsequently controlling the land at the plaintiff's expense).

There simply are not enough facts on the record to make a conclusive determination as to whether Kinney was entitled to a constructive trust on the Lake Road property. For example, the Court is not presented with information concerning who paid the mortgage while Kinney and Gallagher resided on the property together, or what percentage of the down payment Kinney made for the property with his $10,000 contribution. " 'Although the facts may reveal a case of unrealized expectations, [the Court] may not, without more, fashion a constructive trust....' " *In re Balgobin*, 490 B.R. at 22 (quoting *Binenfeld v. Binenfeld*, 146 A.D.2d 663, 664, 537 N.Y.S.2d 41 (2d Dep't 1989)). A moral obligation alone "is not enough to set a court in motion to compel the devolution of property in a certain way." *Id.* at 27 n. 6 (quotation omitted).

### b. Timing of Existence of Constructive Trust

■ Notwithstanding the foregoing discussion, under the circumstances of this

case, a determination as to whether a constructive trust should have been imposed would be purely academic, as even if Kinney was entitled to a constructive trust on the Lake Road property, Kinney has untimely sought to pursue enforcement of his trust in relation to the bankruptcy action.

Kinney argues that it is proper for him to seek to enforce his constructive trust in the property after the closing of Gallagher's bankruptcy proceedings because he was never a creditor to the property, but rather a holder of an equitable interest in the property. (Dkt. 8 at 7). Kinney's argument, although creative, simply is not in line with existing case law. The problem with Kinney's argument, as the Bankruptcy Court aptly noted, is that Kinney is unable to establish that he held an equitable interest in the property prior to the bankruptcy proceeding.

Although Kinney filed an action in state court concerning the Lake Road property on August 24, 2005 (Dkt. 1–6 at 8–13), the nature of that proceeding was "to compel conveyance of real property" (Dkt. 1–5 at 29; Dkt. 1–6 at 12). Kinney did not describe the nature of his action as one seeking a constructive trust until his Note of Issue filed with the state court on August 19, 2013 (Dkt. 1–6 at 20). Gallagher's debts were discharged in January 29, 2008, and the bankruptcy case was closed on December 13, 2011. (Dkt. 6 at 29–30). In any event, there is no court order indicating the existence of a constructive trust.

"Absent a verdict or judgment, [Appellant] [can]not 'properly represent to the bankruptcy court that [he] was, at the time of the commencement of the case, a beneficiary of a constructive trust held by the debtor.'" *In re Emmons–Sheepshead Bay Development LLC,* 518 B.R. 212, 227 (E.D.N.Y.2014) (quoting *In re Omegas Group, Inc.,* 16 F.3d 1443, 1449 (6th Cir. 1994)); *see also In re Taub,* 427 B.R. 208,

220 (Bankr.E.D.N.Y.2010) ("Until the state court or this Court issues an order [imposing a constructive trust], the [properties subject to a constructive trust action] are ... property of the Debtor's estate under Bankruptcy Code Section 541."). In other words, with no court order imposing a constructive trust, the Lake Road property was wholly property of Gallagher's estate under Bankruptcy Code Section 541 at the time of the Chapter 7 proceedings. Kinney has failed to establish that a constructive trust existed prior to or even at the time of Gallaher's bankruptcy proceeding.

**2. Subject to Discharge Injunction**

■ Kinney's claims also fail because the relief he seeks may be satisfied by monetary compensation. As a result, his claims are subject to the discharge injunction. In other words, even though Kinney contends that he is seeking equitable relief in his state court complaint, the relief he seeks may be remedied by monetary damages, and is therefore barred by the discharge injunction.

Kinney argues that his requests are not a claim pursuant to 11 U.S.C. §§ 101(5)(A)–(B) because the equitable relief he seeks does not give rise to payment of money, but rather is limited to the specific performance of directing Gallagher to convey an interest in the property to Kinney. (Dkt. 8 at 10–11). Because there is no request for money, Kinney argues, his request is not a claim under 11 U.S.C. §§ 101(5)(A)–(B), and his state court action is not barred by Gallagher's bankruptcy discharge. (*Id.* at 11).

Under 11 U.S.C. § 524(a)(2), a bankruptcy discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of the debt is waived...." Pursuant to 11

U.S.C. § 101(12), a "debt" is defined as "liability on a claim." Accordingly, the Supreme Court has held that the term "claim" is coextensive with the term "debt" under 11 U.S.C. § 101(5). *Penn. Dep't of Public Welfare v. Davenport,* 495 U.S. 552, 558, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990).

Under Section 101(5) of the Bankruptcy Code, a "claim" is defined as any:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or

(B) the right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

11 U.S.C. § 101(5). Here, the Bankruptcy Court found that Kinney's request for a transfer of 50% equitable interest in the Lake Road property constitutes a "claim" for purposes of the Bankruptcy Code. (Dkt. 6 at 33). This Court agrees.

Kinney alleged within the text of his state court complaint that he "entered into the agreement with [Gallagher] that at such time as he desired, he would be able to receive either title to the property, or proceeds from any sale of the property should [Gallagher] sell the said property." (Dkt. 1–6 at 9). Kinney further alleges in his complaint that he "contributed to the purchase of the property the sum of $10,000.00 at closing, and in addition thereto, has provided numerous items of improvement to the premises," and includes a list of improvements allegedly made to the property and the costs thereof. (*Id.*). In his complaint, Kinney also stated that "[Gallagher] has failed, neglected or re-fused to do anything such as convey title or pay [Kinney] for his interest." (*Id.* at 10–11). Further, Kinney alleges that he "has demanded [Gallagher] convey the premises and account for all monies received in and upon the premises...." (*Id.* at 11).

It does not matter how Kinney's requests are phrased; each request constitutes a claim for either a "right to payment" under 11 U.S.C. § 101(5)(A) or a "right to an equitable remedy for breach of performance giving rise to a right to payment" under 11 U.S.C. § 101(5)(B). Although the precise relief requested is unclear from the language of the complaint, it is evident that the claims alleged in the complaint can be remedied by compensatory damages. As a result, even if Kinney seeks to have a constructive trust imposed so that he is listed as a title owner to the property, this relief is a claim under 11 U.S.C. § 101(5)(B) because a monetary remedy is available. Kinney's choice not to specifically pursue monetary damages does not change the fact that a monetary remedy is available. Kinney cannot escape the bankruptcy discharge through attempts at artful pleading. Kinney's requests, whether phrased in terms of a constructive trust or not, constitute claims as defined by 11 U.S.C. § 101(5). *See In re Stylesite Mktg., Inc.,* 253 B.R. 503, 511 (Bankr.S.D.N.Y.2000) ("An equitable right will be a 'claim' if payment of a monetary remedy is an alternative."). Accordingly, the Bankruptcy Court properly determined that Kinney's state court claims were subject to the discharge injunction.

### C. Gallagher's Cross–Appeal

"Appellee cross-appeals from that part of the Order denying Appellee's motion for an Order adjudging Appellant to be in civil contempt and awarding sanctions equal to actual damages incurred by Appellee in

seeking redress for Appellant's willful violation of the discharge injunction provided for under 11 U.S.C. § 524(a)(2) and enforceable under § 105." (Dkt. 11 at 7). Specifically, Gallagher seeks "sanctions equal to actual damages incurred by Appellee in seeking redress for Appellant's willful violation of the discharge injunction...." (*Id.*).

Despite being provided with ample opportunity to file a response to Gallagher's cross-appeal, Kinney failed to do so. Regardless, the Court finds that the Bankruptcy Court did not abuse its discretion in denying Gallagher's request for the imposition of sanctions.

 "There is no serious question that a violation of the discharge provided in § 524(a)(2) is punishable by contempt." *In re Nassoko*, 405 B.R. 515, 520 (Bankr. S.D.N.Y.2009); *see In re Cruz*, 254 B.R. 801, 816 (Bankr.S.D.N.Y.2000) ("[B]ankruptcy courts have found that violation of the [§ 524(a)(1)] injunction is punishable by contempt.") (quotations omitted) (collecting cases). Sanctions may be appropriate where: (1) a party willfully disobeys a court order, or (2) a losing party acts in bad faith, vexatiously, wantonly, or for oppressive reasons. *In re Cruz*, 254 B.R. at 816 (citing *In re Watkins*, 240 B.R. 668, 678 (Bankr.E.D.N.Y.1999)).

Here, in declining Gallagher's request for sanctions, the Bankruptcy Court found that Kinney's actions were not made in bad faith. (Dkt. 6 at 50). Kinney claims that he sought his state court action under the belief that his claims for an equitable interest were excluded from the bankruptcy estate and thus not violative of the stay. (Dkt. 8 at 11–12). Further, once the case was removed to Bankruptcy Court, Kinney ceased pursuit of his state court action and pursued his claims before the Bankruptcy Court. The Court finds that the Bankruptcy Court did not abuse

its discretion in determining that Kinney did not act in bad faith in pursuit of his state law action or willfully disobey a court order. As a result, sanctions are not warranted under these circumstances.

## IV. CONCLUSION

For the foregoing reasons, the order of the United States Bankruptcy Court for the Western District of New York, entered on March 21, 2014 (Dkt. 1–1), is affirmed in all respects.

SO ORDERED.